**Justin Wayne CARLOCK, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–98–174–CR**

Court of Appeals of Texas,
Waco.

Dec. 15, 1999.

Rehearing Overruled Jan. 5, 2000.

John M. Hurley, Waco, for appellant.

B.J. Shepherd, Dist. Atty., Meridian, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

TOM GRAY, Justice.

In the middle of the night, in Cranfills Gap, Justin Wayne Carlock and a juvenile entered a home in search of items to steal and sell so they could buy drugs. The resident, a 95 year old man, was home. The assailants alternated holding the victim while the other searched the home. On May 20, 1998, Carlock was convicted by a jury of burglary of a habitation, a first degree felony, and sentenced to twenty years in prison. He brings eight issues on appeal. We will affirm his conviction.

### FACTS

On the night of January 3, 1998, Carlock and four other individuals, three being juveniles, decided to burglarize some homes in Cranfills Gap, Bosque County, Texas. The grand mother, great-grand mother and other relatives of one of the juveniles lived in Cranfills Gap, and apparently, the town had no local police department. The boys' original purpose in the burglary plan was to steal items to sell and to ultimately buy drugs.

They initially attempted to gain entry to one house through the back door. However, because the door slammed and the resident awoke, the boys left for fear of being caught. Carlock and a juvenile were then directed by the others toward the house of Ruben Tindell, a 95 year old man who lived alone. Before entering the

house through the back door, the juvenile decided to cut Tindell's telephone line so that they could escape, if necessary, before Tindell could call the authorities.

Carlock and the juvenile entered Tindell's house and made their way to a bedroom where they located and stole some jewelry. They then found another bedroom, turned on the light, and discovered Tindell, asleep on the bed. Carlock put a pillow over Tindell's head and held him down by the wrists while the juvenile looked for more items to steal. The juvenile also held Tindell down while Carlock searched the house. After taking jewelry, knives and a shotgun, Carlock tied the bedroom door shut with a leather belt. The juvenile suggested stealing Tindell's car, and Carlock drove. He ultimately crashed the vehicle a few blocks from his father's house in Cleburne after being chased by a deputy with the Johnson County Sheriff's Office and a police officer from the Rio Vista Police Department. The two ran and were later apprehended at Carlock's father's house.

Ruben Tindell testified that he was awakened by a noise and the light of a flashlight on the night of January 3, 1998. A rubber mat, coupled with a pillow, was thrown over his head, and his arms were grabbed and held. He could hardly breathe and told his assailant such. Tindell worked one hand free and used it to create enough space between his face and the rubber mat so he could breathe. His other arm was used by the attacker to strike Tindell in the head and shoulder while being ordered to reveal the location of his money and guns. Both arms were bruised and his jaw was sore as a result of this incident. Tindell was helpless and in fear of his life.

When the intruders left, Tindell laid in his bed until he heard his car start. He put on a pair of shoes and trousers to go and call 911, but found that his door had been tied shut with a belt. He was able to break the belt. Tindell went to the telephone and discovered the line had been cut. He then walked to a neighbor's house to call the Bosque County Sheriff's Office.

## MOTION TO QUASH

In his first issue brought before this Court, Carlock contends that the trial court erred in overruling his motion to quash the indictment filed against him. Carlock urged at a hearing before the trial court that the indictment was so vague that it failed to give him notice as to what offense was charged and that it was duplicitous. After arguments by both parties, the motion was overruled.

### VAGUE INDICTMENT

In relevant part, the indictment charged:

> ... Justin Wayne Carlock ... did then and there, with intent to commit a felony, to wit: robbery, intentionally and knowingly enter a habitation, without the effective consent of Ruben A. Tindall [sic], the owner thereof, and did commit or attempt to commit a felony offense of robbery, or aggravated robbery, or aggravated assault, or injury to an elderly or disabled individual....

In this one paragraph, Carlock was charged with burglary of a habitation with the intent to commit a felony offense, that being robbery. TEX. PENAL CODE ANN. § 30.02(a)(1) (Vernon 1994). The paragraph also charged Carlock with burglary of a habitation by committing or attempting to commit a felony offense. TEX. PENAL CODE ANN. § 30.02(a)(3) (Vernon 1994). The felony the State alleged Carlock committed or attempted to commit was either robbery, or aggravated robbery, or aggravated assault, or injury to an elderly or disabled person. An offense under section 30.02(a)(1) or (3) is classified as a first degree felony if any of the additional felonies alleged are not felony theft. TEX. PENAL CODE ANN. § 30.02(d) (Vernon Supp. 1999).

Carlock believes the indictment to be unduly vague because the various felonies he is alleged to have committed or

attempted to commit while entering the habitation without Tindell's consent were charged disjunctively. It has long been held that where there are several ways or means by which an offense may be committed set forth in the same statute, and those ways or means are subject to the same punishment, they may be charged conjunctively in one paragraph. *Eastep v. State,* 941 S.W.2d 130, 133 (Tex.Crim.App. 1997); *Schwenk v. State,* 733 S.W.2d 142, 149 (Tex.Crim.App.1981); *Sidney v. State,* 560 S.W.2d 679, 681 (Tex.Crim.App.1978); *Garcia v. State,* 537 S.W.2d 930, 932 (Tex. Crim.App.1976). The alternative means may also be charged disjunctively. *Hunter v. State,* 576 S.W.2d 395, 399 (Tex.Crim. App. [Panel Op.] 1979); *Krebsbach v. State,* 962 S.W.2d 728, 731 (Tex.App.— Amarillo 1998, pet. ref'd).

■ Under (a)(3) of the burglary statute, the indictment, although not artfully worded, charged Carlock with committing or attempting to commit one or more of five different felonies, other than felony theft, when he entered Ruben Tindell's house without permission. The statute allows for the proof of any felony, other than felony theft, to be classified as a first degree felony; and because none of the felonies alleged were felony theft, the same punishment is imposed regardless of which felony is proved by the State. *See* TEX. PENAL CODE ANN. § 30.02(d) (Vernon Supp.1999). This portion of the indictment is not so vague as to give insufficient notice of the offense charged.

DUPLICITOUS INDICTMENT

■ Carlock also contends that the indictment is duplicitous. "Duplicity" is the technical fault of uniting two or more offenses in the same count of an indictment. BLACK'S LAW DICTIONARY 503 (6th ed.1990); *Gahl v. State,* 721 S.W.2d 888, 895 (Tex.App.—Dallas 1986, pet. ref'd). The statute setting out the offense of burglary also allows for several ways and means by which that offense can be committed. *See* TEX. PENAL CODE ANN. § 30.02 (Vernon 1994). As noted previously, the indictment charged Carlock with burglary of a habitation under section 30.02(a)(1) *and* (a)(3). Because none of the felonies alleged by the State included felony theft, the punishment for both variations of burglary of a habitation remained the same, that being, as a first degree felony. TEX. PENAL CODE ANN. § 30.02(d) (Vernon Supp. 1999). The indictment is not, therefore, duplicitous. *Mixon v. State,* 632 S.W.2d 836, 838–839 (Tex.App.—Dallas 1982, pet. ref'd); *see also Gahl,* 721 S.W.2d at 896. Carlock's first issue is overruled.

## LEGAL SUFFICIENCY

In issues three and four, Carlock complains that the trial court erred in overruling his motion for directed verdict and in submitting its charge to the jury because the State was then allowed to convict Carlock without proof of "intent to commit a felony, to wit: robbery." The trial court overruled Carlock's motion and his objection to the charge. Carlock's argument under each issue is the same, so we will discuss the issues together.

■ Carlock's only contention under these issues is that the evidence was legally insufficient to prove his intent to commit robbery at the time he entered Tindell's house. Although the State alleged burglary "with intent to commit robbery," it was not required, in this instance, to prove that allegation. Because the State alleged multiple means for the commission of the offense, it was required to prove only one of the alleged means in order to support the conviction. *Eastep,* 941 S.W.2d at 133. Allegation and proof of any means will suffice to support a conviction. *Sidney,* 560 S.W.2d at 681; *Garcia,* 537 S.W.2d at 933.

The theory of conviction based on intent to commit robbery was not submitted in the trial court's charge; therefore, it is unnecessary for us to decide Carlock's complaint that the evidence was insufficient to support that theory. *Sidney,* 560

S.W.2d at 681; *Garcia,* 537 S.W.2d at 933. Carlock's third and fourth issues are overruled.

## LESSER INCLUDED OFFENSE

■ In his second issue, Carlock asserts that the trial court erred in failing to charge the jury on burglary with the intent to commit theft as a lesser included offense of burglary with intent to commit robbery. Pursuant to the Code of Criminal Procedure, an offense is a lesser included offense if it is established by proof of the same or less than all the facts required to establish the commission of the offense charged. TEX.CODE CRIM. PROC. ANN. art. 37.09(1) (Vernon 1981). The Court of Criminal Appeals implemented a two-step test to determine when a court should give a charge on a lesser included offense to the jury. *Moore v. State,* 969 S.W.2d 4, 8 (Tex.Crim.App.1998). The first step is to decide whether the offense is a "lesser included offense" as defined by article 37.09. *Id.* The second step requires an evaluation of the evidence to determine whether there is some evidence to permit a rational jury to find the defendant is guilty only of the lesser offense. *Id.* The State argues that Carlock was not entitled to a charge on burglary with the intent to commit theft as a lesser included offense. We agree.

■ Had the State proceeded with the theory that Carlock committed burglary of a habitation with the intent to commit a felony, to-wit: robbery, burglary of a habitation with the intent to commit theft is not a lesser included offense. In his brief, Carlock presumes his request was a lesser included offense. This is not correct. It is clear from the statute that we must determine whether the elements of the offense claimed to be a lesser included offense are the *same* or *less* than those required to prove the charged offense.

*See* TEX.CODE CRIM. PROC. ANN. art. 37.09(1) (Vernon 1981) (emphasis added); *Jacob v. State,* 892 S.W.2d 905, 908 (Tex.Crim.App. 1995). To prove the offense of burglary with the intent to commit a felony, the State is required to show:

1. The accused (requires proof of identity);

2. Without the owner's consent;

3. Entered a habitation;

4. With intent;

5. To commit a felony.

TEX. PENAL CODE ANN. § 30.02(a)(1) (Vernon 1994). To prove the offense of burglary with the intent to commit theft, which Carlock contends is a lesser included offense, the State must show:

1. The accused (requires proof of identity);

2. Without the owner's consent;

3. Entered a habitation;

4. With intent;

5. To commit a theft.

*Id.*

The first four elements are exactly the same and would seem to support the idea that the second is a lesser included offense of the first. However, in reviewing all of the elements, the requested offense requires neither proof of the *same* facts, because of the fifth element, nor *less* facts than the offense charged. Proving an intent to commit theft is not the same as, nor less than, proving an intent to commit a felony.[1] They are different, and there is no provision for a denomination as a lesser included offense because of *different* facts. Therefore, Carlock was not entitled to a charge on burglary with intent to commit theft as a lesser included offense, and the trial court did not err in overruling such request. Issue two is overruled.

---

1. Examples of offenses with less than all the facts required to establish the charged offense would include murder when the charged offense was capital murder, or criminal trespass when the charged offense was burglary. *See Moore,* 969 S.W.2d at 12, and *Day v. State,* 532 S.W.2d 302, 306 (Tex.Crim.App. 1975).

## JURY ARGUMENT

 Carlock contends in his last four issues that the State engaged in improper jury arguments. Jury arguments are proper if they fall within the following four categories: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to the argument of opposing counsel, and (4) plea for law enforcement. *Cantu v. State*, 939 S.W.2d 627, 633 (Tex.Crim.App.1997); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex.Crim. App.1973).

### Comment on Right to Jury Trial

In his fifth issue, Carlock maintains that the trial court erred in overruling his motion for mistrial after sustaining an objection to two portions of the State's argument which he believed was an improper comment on his right to a jury trial. The alleged offending arguments took place during both opening and closing of the State's argument on guilt/innocence and are set out as follows:

> State: As far as the evidence in this case, frankly I think we could have started this trial about four fifteen yesterday afternoon and ya'll [sic] would have heard all of the information that you would need to find this man guilty of what he's been accused of, came out of his own mouth. Instead, he's pleaded not guilty, asked you to find him not guilty-

> Defense: Objection, Your Honor, comment on his right to trial. We object.

> Court: I will sustain.

> Defense: Request the jury be instructed to disregard.

> Court: He's entitled to a jury— jury trial.

> Defense: Move for mistrial.

> Court: Overruled.

> \* \* \*

> State: Didn't want to confront anyone? Didn't want to confront anyone? Tell me— tell me, please, when he saw Mr. Tindell in bed he didn't want to confront anyone, why didn't he leave? Why didn't he leave? The truth of the matter, he was going to steal to get drugs. He didn't care who it was, what it was or where it was. That is the truth.

> Mr. Hultgren, he stepped up to the bar, pled true. Mr. Stratton stepped up to the bar and pled true—

> Defense: Objection, Your Honor, objection, Your Honor. This implies that the Defendant should have pled something other than not guilty. We would object on that basis.

> Court: Sustain.

> Defense: Instruct the jury to— request the jury be instructed to disregard the prosecutor's argument for any purpose whatsoever.

> Court: You will disregard.

> Defense: Move for a mistrial.

> Court: Overrule.

 When the trial court sustains an objection and grants a request for an instruction for the jury to disregard but denies the motion for mistrial, the issue becomes whether the trial court erred in denying the mistrial. *Faulkner v. State*, 940 S.W.2d 308, 312 (Tex.App.—Fort Worth 1997, pet. ref'd). The trial court's decision is error only if the argument is extreme, manifestly improper, injects new and harmful facts into the case or violates a mandatory statutory provision and was thus so inflammatory that its prejudicial effect cannot be reasonably removed from the minds of the jury by an instruction to disregard. *Id.; Washington v. State*, 822 S.W.2d 110, 118 (Tex.App.—Waco 1991), *rev'd on other grounds*, 856 S.W.2d 184 (Tex.Crim.App.1993). *See also Trent v. State*, 925 S.W.2d 130, 133 (Tex.App.— Waco 1996, no pet.). If the instruction cured any prejudicial effect[2] caused by the

---

**2.** The case law uses the term "harm" in this context. Because of the potential confusion

improper argument, the reviewing court should find that the trial court did not err. *Faulkner,* 940 S.W.2d at 312. If the instruction did not cure the prejudicial effect, error results, and the reviewing court proceeds with a harm analysis. *Id.* at 313; *Washington,* 822 S.W.2d at 118. When a comment is made by a prosecutor regarding a defendant's election to proceed with a jury trial, the concern of the court centers around whether the prosecutor had, in effect, asked the jury to punish or otherwise penalize the defendant for exercising his right to a trial by jury. *See Villarreal v. State,* 860 S.W.2d 647, 649 (Tex.App.—Waco 1993, no pet.); *Taylor v. State,* 987 S.W.2d 597, 600 (Tex.App.—Texarkana 1999, pet. ref'd).

■ Neither portion of the State's argument complained about violated any statutory provision nor injected new or harmful facts. The first argument can reasonably be interpreted as an attempt to show that despite his plea of not guilty, Carlock, himself, supplied all the evidence necessary for the jury to convict him. In the second instance, by asserting that other co-defendants who testified against Carlock had pled or would plead true, the State was highlighting the conflicts in the testimony and emphasizing the "untruths" told by Carlock. Additionally, the arguments were not extreme or manifestly improper. We believe it is clear from the record in this case that it was not the State's intent to request the jury to punish Carlock for exercising his right to a jury trial.

Although we do not expressly decide whether the argument was improper, assuming it was improper, we hold the instructions given by the trial court after the arguments cured the prejudicial effect, if any. The trial court did not err in overruling Carlock's motions for mistrial, and no harm analysis is necessary. *See Faulkner,*

with "harm analysis," we decline to use this term. In examining the means for determining error in this situation, we find that the

940 S.W.2d at 312; *Washington,* 822 S.W.2d at 118. Issue five is overruled.

**PLACING JURORS IN THE POSITION OF THE VICTIM** .

In his sixth issue, Carlock contends that the trial court erred in overruling his motion for mistrial after sustaining an objection to the State's argument which, he believes, improperly placed the jury in the position of the victim. The following argument occurred during the close of the State's argument on guilt/innocence:

State: Hyped? This case is hyped? Can you— let me— ninety-five year old man, could have been any of us lying in bed asleep in the middle of the night and these home invaders come in, jump on top of him, put a pillow over his face, grab him by the arms, and bruises and shakes. You heard him say I was in bed, I was in fear, I didn't think I would get out alive. You heard him say it. That's not in fear of your life? And wouldn't— isn't it logical that the terror— the terror that would go through you? Can you imagine -

Defense: Objection, trying to put the jurors in position of the witness.

Court: I'll sustain.

Defense: Request the jury be instructed to disregard for any purpose whatsoever.

Court: You are instructed to disregard.

Defense: Move for mistrial.

Court: Overruled.

■ As stated previously, assuming, but not deciding, the argument was improper, the issue becomes whether the trial court erred in overruling Carlock's motion for mistrial. *Faulkner,* 940 S.W.2d at 312. If the instruction to disregard by the trial court cured any prejudicial effect caused by the argument, the reviewing court should find that the trial court did

correct term to use would be "prejudicial effect" and use it accordingly.

not err. *Id.* The State began this portion of its argument by responding to Carlock's assertion that the case against him had been "hyped" and "overdramatized." Additionally, Tindell testified numerous times regarding how he feared for his life while being held down, yelled at, and beaten with his own arm.

Bearing this in mind, we find the State's argument was not so inflammatory that any prejudicial effect resulting therefrom could not be cured by an instruction by the trial court. Thus, we hold the instruction given by the trial court after the argument cured the prejudicial effect, if any, and the trial court did not err in overruling Carlock's motion for mistrial. Again, because the trial court did not err, no harm analysis is necessary. *See Faulkner,* 940 S.W.2d at 312; *Washington,* 822 S.W.2d at 118. Carlock's sixth issue is overruled.

ARGUMENT OUTSIDE THE RECORD

Carlock contends in his seventh issue that the trial court erred in overruling his objection to the State's argument on guilt/innocence which he believed asked the jury to speculate on matters outside the scope of the record. The prosecutor argued:

> State: Why would he ask those questions? May be [sic] he thought that if he got up on the stand and said, well, I didn't cause bodily injury he would convince you there's reason to doubt that he's guilty.
>
> Isn't it strange he even went so far as to say I don't know how those marks got on Mr. Tindell? That's how desperate he is. He knows exactly how they got there and whether he produced them or exactly how he produced them is not the issue. He knows how they got there. Maybe his hope was that Mr. Tindell, because of his age or infirmity simply wouldn't be able to get up here, couldn't or wouldn't come to tell you—
>
> Defense: Objection, Your Honor. There's no testimony about that, that's outside the record.

Court: Overruled.

■ The State maintains that the above argument was a reasonable deduction from the evidence. Counsel is allowed wide latitude in drawing inferences from evidence so long as they are reasonable, fair, legitimate and offered in good faith. *McFarland v. State,* 845 S.W.2d 824, 840 (Tex.Crim.App.1992), *cert. denied,* 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993).

Carlock cites only *Young v. State* to support his contention that the facts argued were outside the scope of the record. *Young v. State,* 752 S.W.2d 137 (Tex. App.—Dallas 1988, pet. ref'd). Specifically, he argues that offenses or motives found within the "vivid imagination" of the State without support in the record are beyond the scope of proper jury argument. However, we believe *Young* is not controlling.

In *Young,* the prosecutor argued facts which the court found tried the appellant for a fictitious attempted offense against the police. The prosecutor speculated that the reason the appellant had insisted on returning to his car after a traffic stop was that the appellant knew he had guns in the car. The prosecutor continued, "and then he could— then you take up on the kind of person that you already know that he is. He has been convicted of armed robbery." *Id.* at 144. This theme was continued considerably by the prosecutor. Based on the record before them, the court agreed that offenses found in the vivid imagination of the prosecutor with no support in the record are outside the scope of proper jury argument. It held that the appellant was charged with being a felon in possession of a firearm, not capital murder or resisting arrest as suggested by the prosecutor's argument. *Id.* at 145.

■ In the case before us, the prosecutor first reminded the jury of the types of questions asked by Carlock during voir dire. He then deduced that perhaps, if

Carlock denied one element, the jury would not convict him. The prosecutor continued by restating how Carlock testified that he did not know how the bruises got on the victim. He concluded that Carlock knew exactly how they got there. The prosecutor drew the objection from Carlock when he surmised that Carlock said this because he hoped Tindell would not testify due to his age or infirmity. After the objection was overruled, he reminded the jury that Tindell was the only one who could testify that he was hurt. This does not suggest a finding of guilt based on a different offense as in *Young*.

Carlock's juvenile co-defendant testified that he and Carlock held down Tindell with a pillow and by holding his arms. Tindell testified that he was 95 years old and was held down during the burglary and was struck with his own arm. He also testified that his arms were bruised as a result of the restraints. Carlock testified that he never held Tindell by the arms and did not know how Tindell was bruised. The State was able to show that Carlock had previously lied in a sworn statement to the police.

Based on the record, the State's argument can be considered a reasonable deduction from the evidence. It was reasonable, fair, legitimate, and offered in good faith. *See McFarland v. State,* 845 S.W.2d at 840. Thus, the trial court did not err in overruling Carlock's objection. Carlock's seventh issue is overruled.

SPECULATION

■ In his eighth and final issue, Carlock complains that the trial court erred in overruling his objection to the State's argument on punishment which he believed improperly invited the jury to speculate as to what could have happened to the victim. In its punishment summation, the State argued:

> State: I guess Mr. Hurley will argue ten years or something less than ten years is sufficient. Well, we know the legislature said nine point nine times that may not be sufficient. The maximum punishment is ninety-nine years. Leniency has already been shown in this case because God preserved the life of Mr. Tindell. This is a very serious offense. Whether this Defendant recognized it or not, he was one step away from capital murder. Suppose Mr. Tindell hadn't gotten his hand up there in time to keep from suffocating, suppose—

> Defense: Objection, calls for speculation, calculated to inflame the minds of the jurors.

> Court: I am going to overrule.

Again, Carlock relies only on *Young* to support his proposition. Once again, we find *Young* not to be controlling. In the present case, the record showed that Tindell's home was invaded by at least two individuals. Their purpose was to steal items to ultimately buy drugs. Tindell, a 95 year old man, was asleep in bed at the time of the invasion. A rubber-backed mat and a pillow were placed over Tindell's head and his hands were held down. Tindell's own arm was used to strike him in the face. Tindell managed to free one hand and place it between his face and the mat to allow air in to his face. Prior to that, Tindell had told his assailants that he was having difficulty breathing.

The argument was a reasonable deduction from the evidence that had Tindell not been able to receive more air, he would have died. Had that happened, Carlock would have been facing a higher charge. *See Cain v. State,* 893 S.W.2d 681, 684 (Tex.App.—Fort Worth 1995), *aff'd,* 947 S.W.2d 262 (Tex.Crim.App.1997). Thus, the trial court did not err in overruling Carlock's objection. Issue eight is overruled.

## CONCLUSION

Having overruled all of Carlock's issues, the trial court's judgment is affirmed.