William Allen Vanderwall v. The State of Texas















IN THE
TENTH COURT OF APPEALS
 

No. 10-99-029-CR

     WILLIAM ALLEN VANDERWALL,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the County Court
Navarro County, Texas
Trial Court # 45421
                                                                                                                
                                                                                                            
O P I N I O N
                                                                                                                
   
      William Allen Vanderwall was charged with, and found guilty of, driving while
intoxicated. The jury assessed punishment at 180 days in jail and a fine of $750.00. The trial
court suspended the punishment and placed Vanderwall on community supervision for two
years.
      Vanderwall appeals his conviction and brings three issues for review. Because he does not
ask for a review of the sufficiency of the evidence, a factual recitation is not necessary. We
affirm.
Challenge for Cause
      In his first issue, Vanderwall argues that the trial court erred in failing to excuse a
venireman for cause after the venireman demonstrated a bias against him. Specifically,
Vanderwall contends that, because venireman Franks expressed he would weigh heavily a
breath test refusal against a defendant, Franks was biased against him. 
      A challenge for cause is an objection to a juror which alleges that some fact renders the
juror unfit or incapable to serve on a jury. Tex. Code Crim. Pro. Ann. art. 35.16(a)
(Vernon 1989). The State or the defendant may make a challenge for cause if the venireman
has a bias or prejudice in favor of or against the defendant. Id. (a)(9). It has long been held
that to preserve a complaint on this issue, Vanderwall must demonstrate on the record:
1.that he asserted a clear and specific challenge for cause, 
2.that he used a peremptory challenge on the complained-of venireman,
3.that all his peremptory challenges were exhausted, 
4.that his request for additional strikes was denied, and 
5.that an objectionable juror sat on the jury. 
Cannady v. State, 11 S.W.3d 205, 208 (Tex. Crim. App. 2000), cert. filed; Green v. State,
934 S.W.2d 92, 105 (Tex. Crim. App. 1996); Harris v. State, 790 S.W.2d 568, 581 (Tex.
Crim. App. 1989); Demochette v. State, 731 S.W.2d 75, 83 (Tex. Crim. App. 1986).
      Vanderwall followed all of the requirements except one. He did not show, and cannot
show, that his request for additional strikes was denied because he did not request any
additional strikes. Thus, his complaint has not been preserved. Issue one is overruled.
 

Extraneous Offense
      In his second issue, Vanderwall complains that the trial court erred in allowing the State to
present evidence of his driver’s license suspension due to his refusal to take a breath test.
Vanderwall contends this suspension is an extraneous offense. He argues that the evidence is
not admissible under Rule 404(b) because he requested notice of its use and the State did not
notify him of its intent to use the license suspension. See Tex. R. Evid. 404(b).
      Vanderwall filed what he termed “Defendant’s Request for Notice of Extraneous
Offenses.” It was addressed, “To the Honorable Judge of Said Court.” Vanderwall attached
an order requesting the trial court to either grant his request, deny his request or grant the
request in part. A certificate of service was also attached certifying that the District Attorney’s
Office was served with the document. On the day of trial, and calling the request his
“standard Motion for Request of Extraneous Offenses,” Vanderwall presented the document to
the trial court in conjunction with a motion in limine. He never received a ruling on the
request, only an acknowledgment of the motion in limine.
      The State’s duty to provide “reasonable notice” under Rule 404(b) of its intent to
introduce certain extraneous offenses is only triggered by a timely request by the defendant. 
Mitchell v. State, 982 S.W.2d 425, 427 (Tex. Crim. App. 1998); Espinosa v. State, 853
S.W.2d 36, 39 (Tex. Crim. App. 1993). But, when a document filed by a defendant asks for
trial court action, it is not a request for notice which would trigger the State’s duty under Rule
404(b); it is a motion. See, Simpson v. State, 991 S.W.2d 798, 801 (Tex. Crim. App. 1998);
Espinosa, 853 S.W.2d at 39. Cf. Mitchell, 982 S.W.2d at 427. If such a motion is filed, the
defendant must secure a ruling on the motion to trigger the State’s notice requirements under
Rule 404(b). Espinosa, 853 S.W.2d at 39. See also, Mitchell, 982 S.W.2d at 427; Simpson v.
State, 991 S.W.2d at 801.
      Vanderwall’s request was a motion which sought trial court action. He did not secure a
ruling on that motion. Thus, the notice provisions of Rule 404(b) were not triggered. The
trial court did not err in admitting the evidence. Issue two is overruled.
Improper Argument
      In his third issue, Vanderwall contends that the trial court erred in denying his motions for
mistrial after objections for improper argument by the State were sustained. 
      Jury arguments are proper if they fall within the following four categories: (1) summation
of the evidence, (2) reasonable deduction from the evidence, (3) answer to the argument of
opposing counsel, and (4) plea for law enforcement. Cantu v. State, 939 S.W.2d 627, 633
(Tex. Crim. App. 1997); Alejandro v. State, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).
      When the trial court sustains an objection and grants a request for an instruction for the
jury to disregard but denies the motion for mistrial, the issue becomes whether the trial court
erred in denying the mistrial. Carlock v. State, 8 S.W.3d 717, 723 (Tex. App.—Waco 2000,
no pet.); Faulkner v. State, 940 S.W.2d 308, 312 (Tex. App.—Fort Worth 1997, pet. ref’d). 
The trial court’s decision is error only if the argument is extreme, manifestly improper, injects
new and harmful facts into the case or violates a mandatory statutory provision and was thus so
inflammatory that its prejudicial effect cannot be reasonably removed from the minds of the
jury by an instruction to disregard. Carlock, 8 S.W.3d at 723; Washington v. State, 822
S.W.2d 110, 118 (Tex. App.—Waco 1991), rev’d on other grounds, 856 S.W.2d 184 (Tex.
Crim. App. 1993). See also Trent v. State, 925 S.W.2d 130, 133 (Tex. App.—Waco 1996, no
pet.). 
      If the instruction cured any prejudicial effect


 caused by the improper argument, the
reviewing court should find that the trial court did not err. Carlock, 8 S.W.3d at 723-724. If
the instruction did not cure the prejudicial effect, error results, and the reviewing court
proceeds with a harm analysis. Id. at 724; Washington, 822 S.W.2d at 118. 
      The alleged offending arguments took place during the closing of the State’s argument on
guilt/innocence and the first is set out as follows:
      State:          Now, you saw this officer testify today. And I submit to
you, you saw a trustworthy, credible, competent, and
responsible officer.
 
      Defense:      Excuse me, Mr. Laird. Your Honor, at this time, I’m
going to object to improper closing argument, interjecting
the prosecutor’s own personal beliefs as to the credibility of
a witness. It’s improper closing arguments.
 
      State:          Witness credibility is a part.
 
      Court:         I’m going to sustain the objection. The jury, though, can
take from the witnesses what they want.
 
      Defense:      I’m sorry. Briefly, Your Honor, at this point, I need to ask
the Court to instruct the jury to disregard the prosecutor’s
last statement.
 
      Court:         I’d ask the jury to disregard the last statement.
 
      Defense:      Thank you. And I make a Motion for Mistrial.
 
      Court:         Denied.
 
      Defense:      Thank you.


      While evidence creating an inference that a witness is not trustworthy may be argued, it is
error to argue the jury should believe a witness because the prosecutor does. Gardner v. State,
730 S.W.2d 675, 698 (Tex. Crim. App. 1987). The determination of the credibility of a
witness is the job of the fact finder, not the prosecutor. Id. 
      In the argument preceding Vanderwall’s first objection, the State responded to attacks
from the defense regarding the credibility of the arresting officer by arguing that the jury
should believe the officer. By arguing, “I submit to you, you saw a trustworthy...officer,” the
prosecutor implied that he believed the officer to be trustworthy. Thus, the trial court properly
sustained Vanderwall’s first objection to the argument of the prosecutor. However, the
remarks by the prosecutor were not so inflammatory that the prejudicial effect could not be
reasonably removed from the juror’s minds by an instruction to disregard. Therefore, the trial
court’s instruction cured the prejudicial effect of the first portion of the argument to which 
objection was made.
      The second portion of argument objected to by Vanderwall is as follows:
      State:          Mr. Keathley mentions Chief Jordan, Becky Jordan. I
didn’t call her to testify. Why? She knew nothing about
the case. She wasn’t involved in any of the arrest reports. 
She wasn’t the arresting officer. She was called out only to
transport the defendant. She had nothing to add. I didn’t
call her. She had nothing to add. I think I asked her a
couple of questions about the officer’s trustworthiness, and
you heard her say, You bet, he’s trustworthy.
 
      Defense:      Excuse me, Your Honor. We’re going to object to that. 
We objected; that was sustained.
 
      Court:         I’ll sustain the objection, and I’d ask the jury to disregard
the last statement made by the counsel.
 
      Defense:      Thank you, Your Honor. We make a Motion for Mistrial.
 
      Court:         I’ll deny that.
 
      Defense:      Thank you.

      At this juncture, the State was summarizing testimony elicited from the police chief. The
prosecutor’s argument did not vouch either for the credibility of the police chief or for the
credibility of the arresting officer through the chief. Although the chief’s testimony had been
objected to, it was not excluded from the jury’s consideration by an instruction to disregard. 
Thus, the argument by the State was supported by the record and was a proper summary of the
testimony. However, even if the argument was error, it was not so inflammatory that its
prejudicial effect could not be reasonably removed from the juror’s minds by an instruction to
disregard. Therefore, the trial court’s instruction to disregard cured the prejudicial effect, if
any, and the motion for mistrial was properly denied. 
      Vanderwall’s third issue is overruled.
Conclusion
      Having overruled all of Vanderwall’s issues, his conviction is affirmed.
 
                                                             TOM GRAY
                                                             Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Affirmed
Opinion delivered and filed August 30, 2000
Do not publish



IFG did receive advance payments from Marquette on newly submitted
applications. When a putative insured submitted his application for a policy, he would include the
first month's premium with his application. Under the Marquette Agreement, IFG was entitled
to 100% of the commissionable premium derived from this initial payment. This payment
received by IFG, however, was subject to being reclaimed by Marquette in the event either that
Marquette determined that the putative insured was ineligible, under its own rules for qualification
for a policy, or the insured, as he has a legal right to do, decides not to accept the policy within
approximately 30 days of the application. An application cancelled by Marquette was referred to
as a "declined" and an application cancelled by the applicant was referred to as a "not-taken". 
          Mills and Nicholson both provided sworn testimony that Marquette would pay IFG the
commissionable premium generated from these applications and then later debit IFG's account for
the value of these commissionable premiums if the application was not-taken or declined. They
believed Marquette was handling these accounts on a continual basis to keep up with these
charges. See Transcript 629, 2144.
          The problem, according to Marquette, appears to evolve from situations where the insured
cancels his policy sometime after the first month. See Appellee's Brief at 15. When an
application would be cancelled within the first month as either a not-taken or a declined, IFG
would be charged back the commissionable premium that was issued to it when the application was
submitted. This procedure caused no problems for either Marquette or IFG. The charge-backs
that did cause serious problems occurred when an application was cancelled sometime after the
first month. Under that situation, IFG would have already received 100% of the first month's
commissionable premium, plus either 45 or 50% of the commissionable premium generated from
each subsequent month's premium payments. Apparently, IFG believed that, under that scenario,
no charge-backs should have been made at all because it was entitled to keep all the
commissionable premiums paid to it up to the date of cancellation. Marquette, on the other hand,
construed the 50% per annum provision mentioned above as meaning that IFG would never be
entitled to keep more than 50% of the commissionable premium generated from any insured for
any reason.


 As a pure matter of mathematics, under the system of payment reflected in the
Marquette Agreement, IFG would have been paid more than 50% of the commissionable premium
if a policy was cancelled, for whatever reason, during the second through the eleventh months of
the policy. The summary judgment evidence, along with the pleadings, seems to indicate that
Marquette in the February 24, 1992, statement decided to charge IFG for all amounts previously
paid to IFG by Marquette that exceeded the 50% mark for each insured.
          There appears to be no controversy between the parties concerning Marquette's ability to
recoup from IFG the first month's commissionable premium when the putative insured's
application, during that first month, was either rejected by Marquette or rescinded by the
applicant. Therefore, any attempt to label IFG's payment method as either "earned" or
"advanced" during this first month is inconsequential. The real question is whether Marquette was
able, according to the agreements, to recoup any commissionable premiums paid to IFG for an
insured who had his policy cancelled, for whatever reason, during the second through eleventh
months. A proper construction of the 50% per annum provision is required before a determination
can be made as to whether Marquette breached its contract with IFG. Because this ground was
not argued to the trial court, it cannot be considered on appeal. See Tex. R. Civ. P. 166a(c). We
will reverse and remand on this point of error.
V. Whether Summary Judgment on the Misappropriation of Assets Claims Was
Error

          IFG argues the trial court erred in granting Cline summary judgment on its claims of
misappropriation of funds, money had and received, and assumpsit. The evidence establishes that
any funds taken from IFG by either Cline or Marquette was done pursuant to the agreements. 
Accordingly, IFG's only argument is for breach of contract. Therefore, the trial court did not err
in granting summary judgment on these extraneous issues.
VI. Whether the Awarding of Attorney's Fees and Out-of-Pocket Costs Was Error

          IFG argues that the trial court erred in ordering it to pay attorney's fees and out-of-pocket
costs to Marquette for enforcing its rights under the contract. However, as we are remanding the
cause to the trial court for another construction of the contracts, we conclude the trial court's order
of attorney's fees should be reversed.
          IFG also argues that the awarding of attorney's fees for Cline was error. We agree. The
trial court granted Cline attorney's fees for declaring that Cline could not be contractually liable
to IFG. IFG, however, never sued Cline for breach of contract; IFG only sued Cline in tort. The
awarding of attorney's fees was based upon this declaratory judgment ruling. As declaratory
judgment is not an appropriate vehicle for determining tort liability, the trial court erred. See The
Housing Auth. of the City of Harlingen v. Valdez, 841 S.W.2d 860, 865 (Tex. App.—Corpus
Christi 1992, writ denied); K.M.S. Research Lab., Inc. v. Willingham, 629 S.W.2d 173, 174
(Tex. App.—Dallas 1982, no writ).
VII. Whether Summary Judgment on the Insurance Code Claims Was Error

          IFG contends the trial court erred in granting summary judgment in favor of Marquette and
Cline on IFG's insurance code claim. Section 16(a) of article 21.21 of the Insurance Code
provides:
Any person who has sustained actual damages as a result of another's engaging in
an act or practice declared in Section 4 of this Article or in rules or regulations
lawfully adopted by the [state insurance] Board under this Article to be unfair
methods of competition or unfair or deceptive acts or practices in the business of
insurance or in any practice defined by Section 17.46 of the Business & Commerce
Code, as amended, as an unlawful deceptive trade practice may maintain an action
against the person or persons engaging in such acts or practices.

Tex. Ins. Code Ann. art. 21.21, § 16(a) (Vernon Supp. 1995).
          IFG's argument must fail because article 21.21 provides a cause of action only in the
context of an insured-insurer relationship. See Allstate Ins. Co. v. Watson, 876 S.W.2d 145, 149
(Tex. 1994) (on rehearing). The Supreme Court in Watson, although dealing specifically with the
question of whether a third party beneficiary to an insurance contract could sue an insurer under
article 21.21 for unfair claim settlement practices, noted that the impetus for the enactment of
article 21.21 derived from the special relationship between an insured and an insurer. The court
wrote:
The obligations imposed by art. 21.21 of the Insurance Code and Vail [v. Texas
Farm Bureau Mutual Ins. Co., 754 S.W.2d 129 (Tex. 1988) (a case construing
article 21.21) are engrafted onto the contract between the insurer and insured and
are extra-contractual in nature. A third party claimant has no contract with the
insurer or the insured, has not paid any premiums, has on legal relationship to the
insurer or special relationship of trust with the insurer, and in short, has no basis
upon which to expect or demand the benefit of the extra-contractual obligations
imposed on insurers under art. 21.21 with regard to their insureds. Nothing in Vail
suggests that the extra-contractual obligations, rights, and remedies of art. 21.21,
section 16 extend to third party claimants.

Watson, 876 S.W.2d at 149.
          In the instant case, obviously, the plaintiff is not a third party claimant or beneficiary to
contract between an insured and an insurer. It is true that the source of the conflict in this case
is a direct contract between an insurer and another party. But the fact that this other party is not
an insured demands the conclusion that article 21.21 provides no cause of action to this other
party. When the Watson court discussed article 21.21 imposing extra-contractual obligations upon
an insured, it did so because it recognized the special legal relationship between an insurer and the
insured. See id. The insurer is required to stand as the insured's champion should he incur any
financial liability as the result of committing a certain type of conduct covered in his insurance
policy. See id. at 150. It is the nature of this relationship that prompted the legislature to provide
insureds a statutory cause of action against the insurer when it acts deceptively toward the insured. 
See id. at 147; see also Transport Ins. Co. v. Faircloth, 38 Tex. Sup. Ct. J. 424, 426 (March 30,
1995). This special relationship of trust between an insured and an insurer simply does not exist
in the setting of an agent selling policies for an insurer. Accordingly, we conclude that article
21.21 provides IFG no cause of action against either Marquette or Cline.
          We reverse and remand the summary judgment rendered on IFG's breach of contract claim
against Marquette and the awarding of attorney's fees and out-of-pocket costs to Marquette on the
breach of contract claim. We affirm the trial courts summary judgment in favor of Marquette and
Cline on the fraud claims and the article 21.21 claims. We also affirm the trial court's summary
judgment in favor of Cline on the misappropriation of assets claims. 
 
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed in part, reversed and remanded in part
Opinion delivered and filed May 31, 1995
Do not publish