**Affirm and Opinion Filed July 31, 2013**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-12-00646-CR**

**ROBERT TRACY WARTERFIELD, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 7**
**Dallas County, Texas**
**Trial Court Cause No. F10-61655-Y**

## OPINION

Before Justices FitzGerald, Francis, and Lewis
Opinion by Justice FitzGerald

A jury convicted appellant Robert Tracy Warterfield of aggravated sexual assault of a child and assessed punishment at life in prison. The trial judge rendered judgment in accordance with the jury verdict. Appellant timely appealed. We affirm.

### I. BACKGROUND

The trial in this case was held in January 2012, but the offense at issue in this case occurred in 1989. Using the pseudonym Kelly Gibson, the complainant testified to the following facts. In October 1989, she was seven years old. She lived in a house with her parents and five siblings. The night of September 30, 1989, after Gibson had gone to bed and gone to sleep, she woke up and realized that she had been picked up and was being carried. There was a pillowcase over her head. The person who was carrying her was speaking to her and telling her not to say

anything. At first she was half asleep, and she was not alarmed because she thought it was her grandfather's voice. Gradually she realized it was not her grandfather, and the person told her not to say anything or he would kill her. The person took her outside and set her down on the ground. He took the pillowcase off, but it was so dark that Gibson could not clearly see him. He told her to take her panties off, and she did. She felt touching, intense pressure, and pain around her vagina. Then the man put his penis in her mouth and told her to lick it until the pee came out. She complied, and he ejaculated into her mouth. Then the man left, and she ran back into her house. She went to the kitchen and rinsed her mouth out with water. She then told her parents what had happened, and the police came. She remembered that she was taken to the hospital, where they took her t-shirt away and gave her a physical examination.

Gibson's mother testified that the t-shirt Gibson was wearing at the time of the incident was given to the police.

Police officer Christine Ramirez testified that in October 2010 she obtained a search warrant relating to appellant and that she executed the search warrant the same day. Appellant was already under arrest at the time. Pursuant to the warrant, Ramirez took a saliva sample from appellant via a buccal swab. Ramirez then sent the sample to the Southwestern Institute of Forensic Science (SWIFS).

Angela Fitzwater, a forensic biologist at SWIFS, also testified at trial. She performed DNA testing on appellant's buccal swab and generated a report on the results. SWIFS had a t-shirt cutting that had been obtained in 1989 and stored in its archived evidence storage area. Fitzwater obtained a DNA profile from a sperm sample from a stain on the t-shirt cutting. The DNA profile from the t-shirt stain revealed a mixture of DNA from at least two people. The major contributor to the DNA mixture was a male, and it matched the DNA sample obtained from appellant. The probability of a random match was, conservatively, 1 in 4.09 quadrillion.

–2–

On cross-examination, Fitzwater testified that the DNA tests she performs in her job did not exist in 1989.

After the complainant testified, and over appellant's objection, the trial judge allowed the State to call officer Ramirez back to the stand. She confirmed that she did not remain in the courtroom after her previous testimony to hear any other witness's testimony. She testified to more details about her contact with appellant the day she executed the search warrant. She also explained the chain of custody of the buccal swab when she personally delivered it to SWIFS. Then the State called Fitzwater back to the stand. Fitzwater further explained where the items she tested for DNA are kept at SWIFS, in a freezer in the evidence registration unit. And she explained the SWIFS receipt and documentation of the t-shirt it had received on October 2, 1989. The DNA tests were performed on stains that were on parts of the t-shirt that were cut away from the shirt. The cuttings from the t-shirt are still available today. Fitzwater also testified that the complainant's DNA was also found on the t-shirt samples.

The State rested, and appellant moved for an instructed verdict, which the trial judge denied. Appellant then rested without putting on any evidence, and both sides closed. The jury found appellant guilty. After the punishment phase of the trial, the jury assessed punishment at life in prison. The judge rendered judgment on the jury's verdict, and appellant appealed.

## II. ANALYSIS

Appellant raises six issues on appeal.

### A. Prior plea agreement

In his first issue on appeal, appellant argues that a 1994 plea bargain he entered into barred the State from prosecuting him in the instant case, or at least precluded the State from offering into the evidence the DNA evidence identifying him as the perpetrator of the assault in question.

Some additional facts must be discussed to put appellant's first issue into context. In the instant case, appellant made pretrial motions to dismiss and to suppress evidence based on a 1994 plea bargain. Appellant introduced some relevant documents into evidence at a pretrial hearing, and they were discussed in more detail at a later pretrial hearing. The documents indicate that appellant was charged with sexual assault and aggravated sexual assault in Dallas County in cause number 93-43772. That case involved a different complainant from the instant case. The documents include a "Plea Bargain Agreement" in which appellant agreed to plead guilty and the State agreed to recommend a sentence of ten years' imprisonment and probation of the entire sentence. The agreement is supplemented with a separate document containing the following three paragraphs:

1. The prosecutor agrees that this conviction will not be used for impeachment of the Defendant should he testify in any subsequent case of which the prosecutor has knowledge. (Exhibit "A").

2. Prosecutor agrees this conviction will not be used as an extraneous offense or act against the Defendant in any subsequent case of which the prosecution has knowledge. (Exhibit "A")

3. The Prosecutor agrees that this conviction will not be used in the punishment phase of any subsequent case of which the prosecution has knowledge. (Exhibit "A").

Exhibit A is a piece of paper on which two columns of numbers are handwritten. The first column has a heading "Incident Date" and the second column has a heading "Service #." One of the incident dates is "10/1/89," which corresponds to the date of the offense in this case. That incident is listed with the service number "691635-X." Appellant's name is handwritten at the bottom of Exhibit A, and it appears to be his signature. Both the plea agreement and the supplemental plea bargain appear to be dated April 1994.

Although appellant invokes "collateral estoppel" in his statement of his first issue, his argument under that issue actually refers to "estoppel by contract." *See Rhodes v. State*, 240

–4–

S.W.3d 882, 891–92 (Tex. Crim. App. 2007) (discussing estoppel by contract). In the context of that case, the court held that a defendant could not collaterally attack an agreed judgment that imposed an illegally lenient sentence after enjoying the benefits of that agreed judgment. *Id.* Here, appellant appears to argue that the State is estopped from prosecuting him for the instant offense because in the supplemental plea bargain in cause no. 93-43772, the State agreed it would not do so. But that is not what the supplemental plea bargain says. In that document the State agreed only that "this conviction"—that is, the conviction in cause no. 93-43772—would not be used for impeachment of appellant, as an extraneous offense against appellant, or in the punishment phase of any subsequent case of which the prosecution had knowledge. The State did not agree not to bring charges based on the incidents listed in Exhibit A. Exhibit A appears to be merely a list of potential cases against appellant, attached to the supplemental plea bargain for the purpose of identifying the potential cases of which the State had knowledge. Appellant does not direct our attention to any improper use of his 1994 conviction in the instant case, and we see none.

Appellant also asserts that there are "Fourth Amendment issues" arising from the State's conduct in this case and the 1994 supplemental plea bargain. He seems to argue that (1) the State agreed not to use any materials related to the 1994 case in any of the subsequent cases listed in Exhibit A, (2) when the State got its search warrant in the instant case, it relied in part on a DNA sample taken from appellant in the 1994 case, (3) without the DNA sample from the 1994 case, the State would have lacked probable cause to get the search warrant in this case, and so (4) the State's reliance on the 1994 DNA sample in this case violated the supplemental plea bargain, and its search warrant in this case violated the Fourth Amendment. Without conceding the validity of appellant's logic, we reject his argument because the 1994 supplemental plea bargain did not bar the State from using any and all materials related to cause no. 93-43772. It

–5–

barred the State only from using the "conviction" in that case for certain specified purposes. Even if the State did use materials obtained in the investigation of cause no. 93-43772 to support its search-warrant application in this case, that use did not violate the terms of the supplemental plea bargain.

Appellant's first issue on appeal is without merit.

## B.     Allowing the State to recall witnesses

In his second issue on appeal, appellant argues that the trial judge erred by allowing the State to recall two witnesses who had already testified and been excused. The record shows that at the conclusion of officer Ramirez's initial testimony, the trial judge asked whether she could be "permanently excused." The prosecutor said, "Yes," and the judge told officer Ramirez, "You're permanently excused, ma'am." Fitzwater testified next. At the conclusion of Fitzwater's initial testimony, the trial judge asked whether she could be permanently excused. The prosecutor answered, "Yes, sir. Well, Judge, just in case—." The trial judge then said, "Just remain available, ma'am, but you're excused for the moment." Then the complainant testified. After the complainant testified, the State sought to recall officer Ramirez. Appellant objected, and the trial judge overruled the objection and allowed the State to elicit additional testimony from Ramirez. The judge then allowed the State to recall Fitzwater and elicit additional testimony from her. Appellant argues that these decisions constituted an abuse of discretion.

We conclude appellant has waived this issue by failing to adequately brief it. Failure to present argument or authorities in support of an assertion results in waiver of the issue. *Delapaz v. State*, 228 S.W.3d 183, 197 n.20 (Tex. App.—Dallas 2007, pet. ref'd); *see also Kiss v. State*, 316 S.W.3d 665, 667 (Tex. App.—Dallas 2009, pet. ref'd). Appellant asserts that the trial judge's decisions described above were, or at least could be, arbitrary and capricious. But appellant cites no authority establishing any rule or standard against which to judge the trial

judge's decisions. He cites no authority to explain the significance of "permanently excusing" a witness in this context. Nor does appellant propose any controlling rule or standard, or any factors that might apply to guide the trial judge's decisions in this context. Appellant simply asserts that the trial judge's decisions were abuses of discretion. This does not suffice. *See* TEX. R. APP. P. 38.1(i).

Even if we were to consider the merits of appellant's second issue, we would reject it. The State brings article 36.02 of the code of criminal procedure to our attention: "The court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice." TEX. CODE CRIM. PROC. ANN. art. 36.02 (West 2007). In this case, the State sought to recall two of its witnesses, one of whom had been "permanently excused." At that time, the State had not yet rested. Appellant argued that he would be prejudiced if the State were allowed to recall its witnesses because he had released his consulting expert based on witness Fitzwater's having been permanently excused. But, as it turned out, only officer Ramirez had been permanently excused. Also, the trial judge assured appellant that the court would pay for the additional expense of having the consulting expert return to court, and it appears from the record that the consulting expert did in fact return to court for Fitzwater's additional testimony. When officer Ramirez was recalled to the stand, she testified that she had not remained in the courtroom after her initial testimony to hear any other witness's testimony. Under all these circumstances, we conclude that the trial judge did not abuse his discretion by allowing the State to recall Ramirez and Fitzwater to the stand. *Cf. Black v. State*, 362 S.W.3d 626, 633–36 (Tex. Crim. App. 2012) (discussing article 36.02 and holding trial judge had discretion to allow State to reopen motion-to-suppress hearing and adduce additional evidence on that issue).

We reject appellant's second issue on appeal.

**C.      Sufficiency of the evidence**

In his third issue on appeal, appellant challenges the legal sufficiency of the evidence to support his conviction. In his fourth issue, he challenges the factual sufficiency of the evidence to support his conviction. In the wake of *Brooks v. State*, 323 S.W.3d 893, 894 (Tex. Crim. App. 2010) (plurality op.), we employ only one standard when reviewing the sufficiency of the evidence. *See Bell v. State*, 326 S.W.3d 716, 720 (Tex. App.—Dallas 2010, pet. dism'd). Under this standard, we consider all of the evidence in the light most favorable to the verdict and determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Id.* We defer to the jury's determinations of witness credibility and the weight to be given to witness testimony because the jury is the sole judge of those matters. *Id.*

Appellant's argument is that the evidence did not adequately show the chain of custody for the t-shirt that the complainant was allegedly wearing the night she was assaulted and that ultimately tested positive for appellant's DNA. The DNA test was the only evidence showing that appellant was the person who attacked the complainant. The State argues that the evidence was sufficient.

The complainant testified that she was wearing her brother's t-shirt the night of the attack. The complainant's mother also testified that the complainant was wearing her older brother's black t-shirt the night of the assault. She also testified that the police took the shirt as evidence. This was corroborated by hospital records. State's exhibit 28 is a redacted SWIFS report dated October 31, 1989. The report bears the notations "FL# 89P2361" and "DPD# 691635X," and, via redaction, the complainant's pseudonym Kelly Gibson. The report recites that SWIFS received a t-shirt from the police room lockbox on October 2, 1989, and that seminal fluid and spermatozoa were detected on the t-shirt. So this report connects the t-shirt to the complainant and to the listed identification numbers. State's exhibit 21 is a SWIFS report dated

November 9, 2010. It recites that SWIFS analyzed the newly obtained buccal swab sample from appellant[1] and compared his DNA profile to the previously analyzed samples taken from the t-shirt. This report references "Laboratory #: 89P2361-S1" and "Agency #: 691635X," which correspond to the identification numbers on exhibit 28. So the identification numbers on this report connect the t-shirt to the earlier lab report and to the complainant. The report also contains the conclusion that the "conservative random match probability" between appellant and the sperm cell fraction taken from the t-shirt is 1 in 4.09 quadrillion. The reports also show that the complainant's DNA was also present on the t-shirt, further serving to connect the t-shirt to the incident in question. Finally, Fitzwater testified that when evidence is submitted to the SWIFS laboratory, the case is assigned a unique forensic laboratory number, such as the 89P2361 number that appears on the reports. She confirmed that the t-shirt cutting that she tested was the cutting "that had been kept from 1989."

Viewing the evidence in the light most favorable to the verdict, we hold that a rational juror could conclude beyond a reasonable doubt that the t-shirt tested by SWIFS in 2010 was the t-shirt worn by the complainant on the night of the attack in 1989. A rational juror could also conclude beyond a reasonable doubt, based on the results of the 2010 DNA testing of the t-shirt, that appellant's DNA was present on the t-shirt, and thus that he committed the attack on the complainant.

Appellant's issues three and four are without merit.

D.    Closing argument

In his fifth issue on appeal, appellant argues that the State improperly asked the jury to punish appellant for exercising his right to a jury trial during the State's rebuttal closing

---

[1] The report misspelled appellant's last name as "Waterfield." This was corrected in January 4, 2011 report, which was admitted into evidence as State's exhibit 27.

argument after the punishment phase of the trial. The record shows the following argument and colloquy:

> [THE STATE]: May it please the Court. Counsel. I told you this was a case about catching predators and protecting children. This is the second part of that, protecting children. We talk about a life sentence. And I want to just point to you some of the things from the defense counsel first. He says, Let's fess up. He knew what the evidence was and you still pled not guilty.
>
> [DEFENSE COUNSEL]: Excuse me, Judge, we're going to object to that as instigating his right to have a jury trial.
>
> THE COURT: Response from the State?
>
> [THE STATE]: This is about the responsibility of the person and this is rebuttal to the argument that has been introduced by the defense.
>
> THE COURT: I'm going to sustain the objection. The jury will disregard that argument.
>
> [DEFENSE COUNSEL]: Judge, we ask for an instruction to disregard.
>
> THE COURT: I gave that.
>
> [DEFENSE COUNSEL]: And move for a mistrial.
>
> THE COURT: Denied.

Appellant contends that the trial judge erred by denying his motion for a mistrial.

It is improper for the State to argue that the jury should blame or punish a defendant for exercising his constitutional right to a jury trial. *Eason v. State*, No. 05-10-01232-CR, 2012 WL 2444780, at *3–4 & n.1 (Tex. App.—Dallas June 28, 2012, no pet.) (not designated for publication); *Carlock v. State*, 8 S.W.3d 717, 724 (Tex. App.—Waco 1999, pet. ref'd). Here, the trial judge sustained appellant's objection on that basis and instructed the jury to disregard the State's argument. The question is whether the judge erred by then denying appellant's motion for a mistrial. The standard of review is abuse of discretion. *Archie v. State*, 340 S.W.3d 734, 738–39 (Tex. Crim. App. 2011). We consider (1) the severity of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction given by the trial judge, and

–10–

(3) the likelihood of the same punishment's being assessed. *See id*. at 739; *see also Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). Mistrial is the proper remedy when the improper argument is so inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant. *Archie*, 340 S.W.3d at 739. A mistrial is required only in extreme circumstances, when the prejudice is incurable. *Hawkins*, 135 S.W.3d at 77.

We conclude that the trial judge did not abuse his discretion. As to the first factor, we agree with appellant that the prosecutor's argument could be construed as improperly criticizing appellant for invoking his right to a jury trial. But the argument was brief and isolated, and it was not couched in particularly inflammatory terms. The argument is somewhat similar to the one made in *Carlock*, and in that case the court of appeals characterized the argument as "not extreme or manifestly improper." 8 S.W.3d at 723–24. As to the second factor, the trial judge promptly instructed the jury to disregard the argument, even before appellant could request this relief. As to the third factor, the jury assessed the maximum penalty against appellant, but the crime he committed was heinous, and a number of witnesses testified to appellant's bad character or bad reputation during the punishment phase of the trial. The evidence was a "much more likely reason for the lengthy sentence," *Hawkins*, 135 S.W.3d at 85, than a brief improper argument that the jury was promptly told to disregard.

In sum, this case does not present extreme circumstances in which the prejudice was incurable. We reject appellant's fifth issue on appeal.

## E.    Cumulative error

In his sixth and final issue, appellant argues that we should reverse his conviction in the interest of justice due to the prejudicial effect of cumulative error during trial. We have rejected all claims of error raised by appellant in this appeal. Accordingly, we also reject his claim of

–11–

cumulative error. *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) ("[W]e are aware of no authority holding that non-errors may in their cumulative effect cause error.").

### III. CONCLUSION

For the foregoing reason, we affirm the trial court's judgment.


/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE


Do not Publish
TEX. R. APP. P. 47
120646F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

**JUDGMENT**

ROBERT TRACY WARTERFIELD,
Appellant

No. 05-12-00646-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 7, Dallas County, Texas
Trial Court Cause No. F10-61655-Y.
Opinion delivered by Justice FitzGerald.
Justices Francis and Lewis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered July 31, 2013

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE

–13–