**J.C. FOSTER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–98–247–CR.**

Court of Appeals of Texas, Waco.

July 26, 2000.

John M. Hurley, Waco, for appellant.

John W. Segrest, Crim. Dist. Atty., Laura M. Alaniz, Asst. Crim. Dist. Atty., Waco, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

TOM GRAY, Justice.

Two teenagers, aged 16 and 17, were tired of not having any money. They decided the way to get it was to rob someone. Having set a goal, they took steps to accomplish it. The following day, during the course of committing a robbery, the 17 year old, J.C. Foster, murdered Andrea Cross. He was indicted, tried and convicted of capital murder. Because the death penalty was waived by the State, he was sentenced to life in prison. He brings seven complaints about the validity of the conviction. We affirm the trial court's judgment.

### ADMISSIBILITY OF CO-DEFENDANT'S PLEA

■ In his first issue, Foster complains that the trial court erred in allowing the State to introduce evidence that Alphonso Leatch, the 16 year old juvenile, pled guilty to capital murder. Foster argues that the disposition of Leatch's case is inadmissible because there was no proper purpose for its introduction and because it was being used as proof of Foster's guilt. At trial, the following question, answer and objection occurred:

> State: Why are you currently at [the Texas Youth Commission]?
>
> Leatch: I pled guilty to capital murder.
>
> Defense: Objection. Relevance.
>
> Court: Overruled.

After the above testimony was introduced, Leatch testified that he was serving a 40 year determinate sentence and had completed the capital offender's program. Leatch then testified that he and Foster planned robbing someone the night before the murder "for which [he was] currently ..." in the custody of the Texas Youth Commission. Because the same evidence objected to was subsequently admitted without objection, any alleged error, if error at all, was rendered harmless. *Purtell v. State,* 761 S.W.2d 360, 368 (Tex.Crim. App.1988); *Gaines v. State,* 789 S.W.2d 926, 929 (Tex.App.—Dallas 1990, no pet.). Foster's first issue is overruled.

IMPEACHMENT BY JUVENILE ADJUDICATION

In his second issue, Foster contends that the trial court erred in limiting his cross-examination of Leatch concerning his prior juvenile adjudication for the offense of aggravated robbery. The State argues that Rule 609(d) of the Rules of Evidence prohibits the introduction of juvenile adjudications for impeachment purposes. TEX.R. EVID. 609(d). Based on the facts in the record before us, we agree with the State.

TESTIMONY

Leatch testified that he began taking medication to help him sleep after he was released from the Texas Youth Commission in March of 1997. When Foster's attorney asked why he was in the Texas Youth Commission's custody, the State objected, citing improper impeachment as its reason. The objection was sustained. Outside the presence of the jury, Foster's attorney argued to the trial court that, under the Sixth Amendment of the United States' Constitution, he was entitled to cross-examine Leatch regarding his prior adjudication. The State responded that juvenile adjudications are not admissible for impeachment purposes. Once again, the trial court sustained the State's objection.

Foster was then permitted to perfect a bill of exception outside the presence of the jury. Leatch was asked why he had previously been in the custody of the Texas Youth Commission. He responded that he had been adjudicated for aggravated robbery when he was about 13 or 14 years of age. Leatch testified that the adjudication for aggravated robbery was the only adjudication on his record other than the recent adjudication for capital murder. Leatch also testified that he had no pending charges against him. At the conclusion of this testimony, Foster again urged the trial court to allow him to cross-examine Leatch regarding the prior adjudication. The trial court again sustained the State's objection.

IMPEACHMENT WITH A JUVENILE ADJUDICATION

■ Generally, a witness may be impeached by proof of felony convictions or misdemeanor convictions involving moral turpitude which are final and not too remote in time. TEX.R. EVID. 609; *Rivas v. State,* 501 S.W.2d 918, 919 (Tex.Crim.App. 1973). However, juvenile adjudications do not fall under this general, permissive category of convictions used for impeachment. First, juvenile adjudications are not convictions. TEX. FAM.CODE ANN. § 51.13(a) (Vernon Supp.2000). Second, evidence of a juvenile adjudication, outside the realm of a juvenile proceeding, is not admissible for impeachment unless required by the Constitution of the United States or Texas. TEX.R. EVID. 609(d).

■ Of course, the constitutional right to cross-examination, in a limited sense, may require a juvenile adjudication to be admitted. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. The Court of Criminal Appeals has held that a *pending* juvenile charge may be admissible on cross-examination to show the motive or bias of the witness to testify favorably for the State. *Carmona v. State,* 698 S.W.2d 100, 102 (Tex.Crim.App.1985)(emphasis added); *Harris v. State,* 642 S.W.2d 471, 476 (Tex.Crim.App.1982); *see also Carroll v. State,* 916 S.W.2d 494, 499–500 (Tex. Crim.App.1996). The U.S. Supreme Court has held that a defendant is permitted to cross-examine a crucial witness regarding his juvenile record for the limited purpose of showing bias where the witness was on probation for the juvenile crime while assisting the police and testifying in court. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974). But, it is clear that defendants are not permitted to cross-examine a witness regarding prior juvenile adjudications for general character impeachment purposes. *Id.* at 1112 (Stewart, J., concurring); *Warren v. State,* 514 S.W.2d 458, 465 (Tex.Crim.App.1974); *Gilmore v. State,* 871 S.W.2d 848, 851 (Tex. App.—Houston [14th Dist.] 1994, no pet.).

APPLICATION

■ Foster relies heavily on the U.S. Supreme Court decision in *Davis* to argue that he should have been allowed to cross-examine Leatch about his prior adjudication for aggravated robbery. Based on the record before us, *Davis* does not apply. The "pending charge" exception to Rule 609 is not available to Foster either. The record does not show that Leatch had any charges pending against him. Foster made no showing that because of his previous adjudication, Leatch would have some bias or prejudice to testify favorably for the State. It appears from the record that the only reason for the inquiry into Leatch's prior adjudication was for general impeachment purposes. Thus, the trial court did not err in refusing to allow Foster to question Leatch about his prior juvenile adjudication. His second issue is overruled.

## THE LAW OF PARTIES

In his third issue, Foster contends that an instruction on the law of parties should not have been included in the charge to the jury because the evidence does not support the instruction. Over Foster's objection, the trial court included a "parties" instruction. The application paragraph in the charge which pertains to the party theory is as follows:

"Now if you find from the evidence beyond a reasonable doubt that on or about the 3rd day of September, 1997, in McLennan County, Texas, Alphonso Leatch did intentionally or knowingly commit the offense of robbery of an individual, Andrea Cross and that the defendant, J.C. Foster then and there knew of the intent, if any, of said Alphonso Leatch to rob the said Andrea Cross, and the defendant acted with intent to promote or assist the commission of the offense by Alphonso Leatch by encouraging, directing, aiding, or attempting to aid Alphonso Leatch to commit the offense of Robbery of Andrea Cross, and you further find and believe from the evidence beyond a reasonable doubt that the [d]efendant, J.C. Foster, did then and there intentionally cause the death of Andrea Cross, by shooting her with a firearm, then you will find the defendant, J.C. Foster, guilty of the offense of Capital murder as charged in the indictment."

## RESPONSIBILITY AS A PARTY

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. TEX. PEN.CODE ANN. § 7.01(a) (Vernon 1994). A person is criminally responsible for an offense committed by the conduct of another if acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02(a)(2).

■ A trial court commits error if it submits in the jury charge a theory of liability that is not supported by sufficient evidence. *Collier v. State,* 999 S.W.2d 779, 787 (Tex.Crim.App.1999). To determine whether a defendant is a party to the offense, the courts may look to events that occurred before, during and after the commission of the offense. *Beardsley v. State,* 738 S.W.2d 681, 684 (Tex.Crim.App.1987); *Sendejo v. State,* 953 S.W.2d 443, 451 (Tex. App.—Waco 1997, pet. ref'd). The courts may rely on actions which show an understanding and common design to do a certain act. *Porter v. State,* 634 S.W.2d 846, 849 (Tex.Crim.App. [Panel Op.] 1982). Participation in an offense may be inferred from the circumstances and need not be shown by direct evidence. *Beardsley,* 738 S.W.2d at 684; *Armstead v. State,* 977 S.W.2d 791, 797 (Tex.App.—Fort Worth 1998, pet. ref'd).

## EVIDENCE

■ For the purposes of this argument, Foster does not contest that he shot and

killed Cross. He contests that he was a party to the robbery offense which elevated the charge to capital murder. The record reflects that on the night before the murder and robbery, Foster and Leatch decided to rob someone to acquire some money. The next day, Leatch met Foster outside Cross's house where they planned to buy some marijuana for the expressed purpose of causing Cross to open her safe. Cross stored cash and marijuana in the safe. As Cross bent over to reach under the couch, Foster shot her in the head. Leatch took a tray of marijuana. There is evidence that he and Foster then pushed the unopened safe out the window. They tried to pick up the safe and take it with them, but it was too heavy. They threw it in some bushes near the alley, and Foster tried to hide it with his shirt. The two then went to Leatch's sister's house to smoke some of the marijuana. Leatch was angry because they were only supposed to commit a robbery.

We find this evidence sufficient to support an instruction regarding the law of parties. Foster's third issue is overruled.

JURY ARGUMENT

 In his fourth and fifth issues, Foster contends that the State engaged in improper jury arguments. Jury arguments are proper if they fall within the following four categories: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to the argument of opposing counsel, and (4) plea for law enforcement. *Cantu v. State*, 939 S.W.2d 627, 633 (Tex.Crim.App.1997); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim.App.1973).

OBJECTION OVERRULED

 Foster complains that the State was allowed to impermissibly argue his guilt based upon Leatch's guilty plea to capital murder. Thus the inference, he maintains, would be that if Leatch was guilty, Foster was guilty. During the State's final argument, the prosecutor stated:

You know, the defendant says, J.C. Foster, that he showed up and had this accidental shooting of Andrea Cross; and then, lo and behold, after all this happens Alphonso Leatch shows up. Well, you know, folks, he has got to tell you that story because the thing is if he knows that you know that Alphonso Leatch came in there [and] was waiting, you know that a robbery was going down. That is clear.

Alphonso Leatch has been adjudicated of the offense of capital murder with a 40 year determinant [sic] sentence. Now, if J.C. Foster was acting in self defense, Alphonso Leatch wouldn't be guilty of capital murder.

Foster objected to the State's argument. The objection was overruled.

 The State responds that the argument was a reasonable deduction from the evidence. Counsel is allowed wide latitude in drawing inferences from evidence so long as they are reasonable, fair, legitimate and offered in good faith. *McFarland v. State*, 845 S.W.2d 824, 840 (Tex. Crim.App.1992); *Carlock v. State*, 8 S.W.3d 717, 725 (Tex.App.—Waco 1999, no pet. h.).

Foster had testified that the shooting was in self defense or an accident and that he had no part in the robbery. The State's argument was a rebuttal of his testimony. The evidence showed that Leatch received a 40 year determinate sentence in the Texas Youth Commission for capital murder. Arguing that Leatch would not have pled to being a party to capital murder if the shooting had been in self defense was an attempt by the State to emphasize the lack of credible testimony from Foster. Based on the record, this argument could be construed as a reasonable deduction from the evidence. Thus, the trial court did not err in overruling Foster's objection. His fourth issue is overruled.

Mistrial Overruled

In his fifth issue, Foster contends that the trial court erred when it overruled his motion for mistrial after an objection to the State's closing argument was sustained. The relevant argument is as follows:

> State: If J.C. Foster had accidentally shot Andrea Cross, Alphonso Leatch wouldn't be guilty of capital murder because you could not be guilty as a party of something-there has never been any evidence that Alphonso Leatch shot or killed anybody. You cannot be guilty as a party of something unless the other person involved in the crime committed the crime.
>
> Alphonso Leatch knew what happened out there, and he pled guilty to it. And he came in and told you -
>
> Defense: Your Honor, we must object to this argument. It deprives the defendant of due process of law.
>
> Court: Sustained.
>
> Defense: And the Sixth Amendment -
>
> Court: Instruct the jury they will disregard the last statement of counsel for any purpose.

Foster then moved for a mistrial which was overruled by the trial court

The State again contends that the argument was a reasonable deduction from the evidence. But, when the trial court sustains an objection and grants a request for an instruction for the jury to disregard but denies the motion for mistrial, the issue becomes whether the trial court erred in denying the mistrial. *Carlock*, 8 S.W.3d at 723; *Vollbaum v. State*, 833 S.W.2d 652, 659 (Tex.App.—Waco 1992, pet. ref'd). The trial court's decision can be error only if the argument is extreme, manifestly improper, injects new and harmful facts into the case or violates a mandatory statutory provision and was thus so inflammatory that its prejudicial effect cannot be reasonably removed from the minds of the jury by an instruction to disregard. *Id. See also Trent v. State*, 925 S.W.2d 130, 133 (Tex.App.—Waco 1996, no pet.). If the instruction cured any prejudicial effect caused by the improper argument, the reviewing court should find that the trial court did not err. *Faulkner v. State*, 940 S.W.2d 308, 312 (Tex.App.—Fort Worth 1997, pet. ref'd). If the instruction did not cure the prejudicial effect, error results, and the reviewing court proceeds with a harm analysis. *Carlock*, 8 S.W.3d at 724.

This portion of the State's argument was neither extreme, nor manifestly improper. It also did not inject new and harmful facts into the case or violate a mandatory statute. Assuming, without deciding, the argument was improper, we hold the instruction given by the trial court cured the prejudicial effect, if any. *See Id.; Vollbaum*, 833 S.W.2d at 659. Foster's fifth issue is overruled.

Sufficiency of the Evidence

In his sixth and seventh issues, Foster contends that the evidence was both legally and factually insufficient to support the conviction of capital murder. He specifically contends in each issue that the evidence was insufficient to prove he was a party to the robbery. This is the area to which we will confine our review of the facts.

Facts

Leatch and Foster met the night before the murder and planned to rob someone because they were tired of not having any money. They did not plan to rob anyone in particular, including the victim.

The next day, Leatch left school approximately one hour after arriving and met Foster at Cross's house where they were going to buy marijuana. Leatch stated that they wanted to buy drugs to get the safe opened. Cross kept the marijuana and money in the safe. Foster went into Cross's house alone. Leatch knocked on the door later, but Cross would not let him in unless he was wearing a shirt. Foster loaned Leatch a tank top, and Leatch en-

tered Cross's house. Cross then approached the couch in the living room and began to bend over to reach under it. This did not alarm Leatch because he had purchased drugs from Cross before and knew that she kept plastic baggies in which to place marijuana under the couch. As she was reaching under the couch, Foster shot Cross in the head.

Leatch rummaged through Cross's house looking for something to take with him. He grabbed a tray of marijuana. In the meantime, Foster was beating Tashita Bibles, an overnight guest of Cross, with a crowbar or tire tool. Either Leatch or both Leatch and Foster picked up the safe and pushed it out the window. They both tried to carry it with them, but it was too heavy. They pushed it into some trees or bushes near the alley behind Cross's house, and Foster covered it with his Chicago White Sox T-shirt. This was a different shirt than the one previously loaned to Leatch.

Foster denied any intent to rob Cross. He admitted, however, that he and Leatch had planned on robbing someone. He also stated he did not know when or how Leatch entered Cross's house. Foster admitted that he shot Cross, but testified that he thought she was reaching under the couch for a gun. Foster denied being in the house when the safe was pushed out the window. Rather, he claimed that he was in the alley. He also denied ever touching the safe. He admitted to at least covering the safe with his T-shirt.

LEGAL SUFFICIENCY

■■■ When reviewing a claim of legal insufficiency of the evidence, we must determine, after considering all the evidence in a light most favorable to the verdict, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Johnson v. State*, 967 S.W.2d 410, 412 (Tex.Crim.App.1998). This review is the same for both direct and circumstantial evidence cases. *Green v. State*, 840 S.W.2d 394, 401 (Tex.Crim.App.1992); *see also Geesa v. State*, 820 S.W.2d 154, 159 (Tex.Crim.App.1991).

For a murder to qualify as capital murder, the defendant's intent to rob the victim must be formed at or before the time of the murder. TEX. PEN.CODE ANN. § 19.03(a)(2) (Vernon 1994); *Alvarado v. State*, 912 S.W.2d 199, 207 (Tex.Crim.App. 1995). The fact finder, however, is free to look to the conduct of the accused and make reasonable inferences therefrom. *Hall v. State*, 970 S.W.2d 137, 141 (Tex. App.—Amarillo 1998, pet. ref'd)(citing *Robertson v. State*, 871 S.W.2d 701, 705 (Tex.Crim.App.1993)). Foster contends that at worst, a theft occurred after the murder of Cross. The ultimate question in this case is whether any rational trier of fact would be justified in finding from the evidence as a whole, that Foster intended to take Cross's property before, or as, he murdered her. *Nelson v. State*, 848 S.W.2d 126, 131–132 (Tex.Crim.App.1992). What elevates the occurrence of a theft to robbery is the presence, at the time of, or prior to, the murder, of an intent to obtain or maintain control of the victim's property. *Id.* at 132. Therefore, if there is evidence from which the jury could rationally conclude beyond a reasonable doubt that a defendant formed the intent to obtain or maintain control of the victim's property either before or during the commission of the murder, then the State has proven that the murder occurred in the course of robbery even though the element of appropriation occurred after the murder. *Alvarado*, 912 S.W.2d at 207; *Nelson*, 848 S.W.2d at 132.

We are convinced that a rational trier of fact could find that Foster formed the intent to obtain and maintain control of some of Cross's property prior to or at the time he shot Cross. The evidence is legally sufficient, and Foster's sixth issue is overruled.

FACTUAL SUFFICIENCY

When conducting a review of the factual sufficiency of the evidence, we begin with the assumption that the evidence is legally sufficient. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex.Crim.App.1997). We then apply the latest standard of review set out by the Court of Criminal Appeals in *Johnson v. State*, 23 S.W.3d 1 (Tex.Crim.App.2000). We ask "whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the [fact finder's] determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *Id.* at 11; *see also Clewis v. State*, 922 S.W.2d 126 (Tex.Crim.App.1996); *Stone v. State*, 823 S.W.2d 375 (Tex.App.—Austin 1992, pet. ref'd); *Cain v. State*, 958 S.W.2d 404 (Tex. Crim.App.1997).

After reviewing all the evidence, both for and against the verdict, the proof of guilt is not so obviously weak as to undermine confidence in the jury's verdict. Additionally, the proof of guilt is not greatly outweighed by contrary proof. The evidence is factually sufficient to support the conviction, and Foster's seventh issue is overruled.

CONCLUSION

Having overruled all of Foster's issues on appeal, the judgment of the trial court is affirmed.