

# IN THE
# TENTH COURT OF APPEALS

## No. 10-22-00375-CR

**ADAM REX CARTER,**

                              **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                              **Appellee**

### From the 12th District Court
### Madison County, Texas
### Trial Court No. 20-13398

## MEMORANDUM OPINION

A jury found Appellant Adam Rex Carter guilty of six counts of aggravated assault with a deadly weapon and four counts of deadly conduct. The jury assessed his punishment on the various counts, ranging from eighteen years confinement in the penitentiary to one year confinement in county jail; the trial court sentenced Carter accordingly. Carter appeals in nine issues. We affirm.

## Background Facts

On February 11, 2020, Danielle Carter and her two children, A.C. and J.C., were driving on FM 1452 in Madison County, Texas. Before Danielle and her children arrived home, Carter intercepted his family on the road. He stopped his vehicle in front of hers and got out to approach Danielle in her vehicle. When Danielle did not allow him entry to her vehicle, he returned to his vehicle, retrieved a shotgun, and fired into the passenger side window of Danielle's vehicle. Carter then returned to his vehicle and intentionally ran his vehicle into Danielle's vehicle. Danielle and the children fled their vehicle and ran for assistance to a white truck with three occupants that approached from the other direction. Carter fired the shotgun again at Danielle and the kids while they were running towards the white truck. Carter then pointed the gun at the white truck and its occupants. Once Danielle and the children got into the white truck, Carter left the scene, and the gun was later found in a nearby field.

On April 23, 2020, a grand jury indicted Carter on fourteen felony charges. The indicted offenses were as follows: one count of the second-degree offense of attempted murder for discharging a shotgun towards Danielle; three counts of the second-degree offense of aggravated assault with a deadly weapon for striking the vehicle containing Danielle, J.C., and A.C. with Carter's vehicle; six counts of the second-degree offense of aggravated assault with a deadly weapon for pointing the gun at Danielle, J.C., A.C. and the three occupants of the white truck; and four counts of the third-degree offense of endangering a child.

The trial court consolidated the charges, and trial on all fourteen charges began on June 9, 2022. A directed verdict was granted on the four counts of endangering a child. On the charge of attempted murder, the jury found Carter guilty of the lesser-included third-degree felony offense of deadly conduct and assessed punishment at ten years confinement in in the penitentiary. On the charges of aggravated assault with a deadly weapon for pointing the gun at Danielle, J.C., and A.C., the jury found Carter guilty and assessed punishment at eighteen years confinement in the penitentiary for each count. On the charges of aggravated assault with a deadly weapon for pointing the gun at the three occupants of the white truck, the jury found Carter guilty and assessed punishment at eight years confinement in the penitentiary for each count. On the charges of aggravated assault with a deadly weapon for striking Danielle's vehicle, with Danielle, J.C., and A.C. inside, with his vehicle, the jury found Carter guilty of the lesser-included misdemeanor offense of deadly conduct and assessed punishment at one year confinement in county jail for each count.

## Issue One

In his first issue, Carter contends that the trial court erred in allowing the consolidation of all fourteen indictments, and that the consolidation so prejudiced the rights of Carter that he was denied a fair trial. In support of this issue, Carter argues that the trial court's failure to sustain Carter's objection to consolidation is tantamount to the denial of his right to sever.

AUTHORITY

If a trial judge erroneously denies a severance motion, we review the error under the non-constitutional harm analysis of Rule 44.2(b), disregarding the error unless it adversely affects a defendant's substantial rights. *See* TEX. R. APP. P. 44.2(b); *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011). Neither the defendant nor the State bears the burden of demonstrating harm; instead, we assess harm after reviewing the entirety of the record, including the evidence, jury charge, closing arguments, voir dire, and any other relevant information. *Schutz v. State*, 63 S.W.3d 442, 444–45 (Tex. Crim. App. 2001).

When a defendant files a motion for severance, the trial judge does not have discretion to deny that motion unless the defendant has been charged with an offense listed in Section 3.03(b). *Werner v. State*, 412 S.W.3d 542, 546–47 (Tex. Crim. App. 2013). However, denial of a motion to sever can be harmless if there is substantial overlap of evidence between the separate charges. *Scott v. State*, 235 S.W.3d 255 (Tex. Crim. App. 2007).

DISCUSSION

We must first consider the threshold issue of whether Carter's objection was sufficient to properly request severance of the actions. A defendant's complaint is sufficient if it apprises the trial judge that he does not desire to have the offenses joined in a common trial. *Trevino v. State*, 228 S.W.3d 729, 743 (Tex. App.—Corpus Christi–Edinburg 2006, pet. ref'd). A defendant may so inform the court by objection, request, or motion to sever. *Guia v. State*, 723 S.W.2d 763, 768 (Tex. App.-Dallas 1986, writ ref'd).

Here, the State filed a "Motion to Join and Consolidate" stating that Carter was "separately indicted for offenses covering the same course of conduct, and therefore may be tried jointly, in the discretion of the Court." To support their motion, the State cited Texas Code of Criminal Procedure Section 36.09, which is applicable when two or more defendants indicted for the same offense or any offense growing out of the same transaction are tried jointly at the discretion of the trial court. *See* TEX. CODE CRIM. PROC. 36.09. During the pretrial hearing, Carter agreed with the State that the trial court has discretion to consider this motion but objected to joinder on the basis that it would confuse the jury since certain evidence may be admissible as to some charges but not others. The trial court took the arguments under advisement and later granted the State's motion to join or consolidate. Carter did not file a subsequent motion to sever. During the pretrial hearing, neither side specifically argued Texas Penal Code Sections 3.02 or 3.04 in support of granting or denying the joinder, and both sides improperly stated that joinder or severance are in the discretion of the trial court. However, we believe that the objection was at least sufficient to apprise the trial judge that Carter did not desire to have all fourteen charges joined in a single trial. *See Trevino*, 228 S.W.3d at 729. Therefore, we will continue forward in our analysis under the assumption that Carter's objection was sufficient to request severance of the actions.

The trial judge does not have discretion to deny a motion for severance unless the defendant has been charged with an offense listed in Section 3.03(b). *Werner*, 412 S.W.3d at 546–47. Since the offenses here are not enumerated in Section 3.03(b), the trial court

erred in consolidating the charges over defense objection. Therefore, we turn to whether the error caused harm.

The denial of a motion to sever can be harmless if there is substantial overlap of evidence between the separate charges. *Scott*, 235 S.W.3d at 256. *Llamas* and *Scott* are "book-end" cases. *Werner*, 412 S.W.3d at 548; *See Llamas v. State*, 12 S.W.3d 469 (Tex. Crim. App. 2000); *Scott*, 235 S.W.3d at 255. When there is no overlap of evidence between the two charges, as in *Llamas*, the failure to sever is most likely to be harmful. *Werner*, 412 S.W.3d at 548. When there is a substantial overlap of evidence between the two charges, as in *Scott*, the failure to sever is most likely to be harmless. *Id.* Although the entire record must be examined, the overlap of evidence is the most important factor under *Llamas* and *Scott*. *Id.*

The allegations in each charge occurred during the same series of events within a matter of minutes. This case bears greater resemblance to *Scott*, in which the charges related to each other and were based on a common set of facts, than it does to *Llamas* in which the evidence of one charge was wholly unrelated to the evidence of the other charge. *See Werner*, 412 S.W.3d at 552. Therefore, we conclude that the trial court's joinder of all counts was harmless and that Carter's substantial rights were not affected by the denial of his severance motion.

We overrule Carter's first issue.

**Issue Two**

In his second issue, Carter argues the trial court abused its discretion when during voir dire examination it prohibited Carter from asking jurors if they could consider two years of probation if he was convicted.

AUTHORITY

The trial court has broad discretion over the process of selecting a jury. *Allridge v. State*, 762 S.W.2d 146, 167 (Tex. Crim. App. 1988). We leave to the trial court's discretion the propriety of a particular question and the trial court's discretion will not be disturbed absent an abuse of discretion. *Id* at 163. A trial court's discretion is abused only when a proper question about a proper area of inquiry is prohibited. *Id.*

The inquiry for improper commitment questions has two steps: (1) Is the question a commitment question, and (2) Does the question include facts—and only those facts—that lead to a valid challenge for cause? *Standefer v. State*, 59 S.W.3d 177, 182–83 (Tex. Crim. App. 2001). When the law requires a certain type of commitment from jurors, the attorneys may ask the prospective jurors whether they can follow the law in that regard. *Id.* A juror must be able to consider the full range of punishment for an offense, and a defendant's voir dire question about a juror's ability to do so is generally proper. *Cardenas v. State*, 305 S.W.3d 773, 777 (Tex. App.—Fort Worth 2009), aff'd, 325 S.W.3d 179 (Tex. Crim. App. 2010).

A jury that imposes confinement as punishment for an offense may recommend to the judge that the judge suspend the imposition of the sentence and place the defendant on community supervision. TEX. CODE CRIM. PRO. Ann. art. 42A.055. A judge shall

suspend the imposition of the sentence and place the defendant on community supervision if the jury makes that recommendation in the verdict. *Id.* The jury does not determine the period of community supervision. *Mayes v. State*, 353 S.W.3d 790, 795 (Tex. Crim. App. 2011). It assesses the sentence and recommends that the trial judge place the defendant on community supervision. *Id.*

DISCUSSION

Carter relies primarily on the *Cardenas* case to support his contention that the question he wished to pose to the venire panel was proper. The specific question asked in *Cardenas* was "Could you honestly ever fairly consider on an aggravated sexual assault of a child as little as five years in prison and give probation as an appropriate punishment[?]" *Cardenas*, 325 S.W.3d at 181. The Court of Criminal Appeals explained that this question was proper because it accurately reflects the process by which a defendant is sentenced when the jury assesses a punishment and recommends probation.

Here, the question posed to the venire panel can be distinguished from the question in *Cardenas*. Carter's attorney stated that he "would like to ask every juror could they consider and give as little as 2 years' probation if the defendant is convicted on this indictment." The punishment assessed by the jury refers to how long the defendant must serve in prison if he fails to succeed on community supervision, not how long he remains under supervision. *Mayes*, 353 S.W.3d at 796. The jury does not determine the period of community supervision. *Id* at 795. Here, the question posed by Carter was improper because it asked the jurors if they could determine a specific term of community supervision, the determination of which is solely vested with the trial court. TEX. CODE

CRIM. PRO. Ann. art. 42A.055. The trial court did not err in its instruction that Carter could ask the venire panel about considering probation but could not ask for a specific number of years of probation.

We overrule Carter's second issue.

**Issue Three**

In his third issue, Carter argues that he was denied a fair and impartial trial because the trial court allowed extraneous offenses to be admitted over his objection in violation of Rule 403.

AUTHORITY

The admissibility of evidence is within the discretion of the trial court and will not be overturned absent an abuse of discretion. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). As long as the trial court's ruling was within the zone of reasonable disagreement, the appellate court should affirm. *Montgomery*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). Whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court. *Moses*, 105 S.W.3d at 627. An appellate court owes no less deference to the trial judge in making this decision than it affords him in making any other relevancy determination. *Id*. When a trial court further decides not to exclude the evidence, finding that the probative value of the evidence is not outweighed by the danger of unfair prejudice, this decision too shall be given deference. *Id.*

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the

issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. TEX. R. EVID. Rule 403.

For purposes of error preservation, a request for a limiting instruction must inform the trial court as to what limitations should be placed upon the evidence. *Wells v. State*, 241 S.W.3d 172, 179 (Tex. App.—Eastland 2007, pet. ref'd). The burden of timely requesting a limiting instruction is on the party opposing the general admission of the evidence. *Hammock v. State*, 46 S.W.3d 889, 892 (Tex. Crim. App. 2001).

On request, the jury should be instructed that it can only consider extraneous misconduct evidence if (1) it believes beyond a reasonable doubt that the defendant committed such misconduct and (2) then only for the limited purpose for which it was admitted. *Valadez v. State*, 663 S.W.3d 133 (Tex. Crim. App. 2022). Instructions to the jury are generally considered sufficient to cure improprieties that occur during trial, and we generally presume that a jury will follow the judge's instructions. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009).

DISCUSSION

Carter's argument for his third point of error appears to be twofold: (1) the trial court erred in admitting the evidence in violation of Rule 403, and (2) the trial court gave an improper limiting instruction.

We will start with Carter's argument pertaining to the limiting instruction. Defense requested the following instruction be given to limit the application of the objected-to evidence:

> I would request an instruction that with regard to Count Numbers 1, and 2, and 8, which are the ones where Danielle is listed as a victim, that the jury should be instructed they shouldn't consider that evidence at all unless there's sufficient evidence to believe beyond a reasonable doubt that the defendant actually committed said bad act or bad conduct. And then, only for the limited purposes – I'm not sure what proper limited purposes are. But I'm assuming that the Court must have in mind a limited purpose for it to be admitted and not to be considered as evidence of the defendant's character.

In response to the request from Carter, the trial court gave the following limiting instructions to the jury following the objection and request for limiting instruction from Carter:

> Ladies and gentlemen, the officer's testimony with regard to January 4 and January 5 and the issuance of a criminal trespass warning is only issued for a limited purpose, and it is only relevant as to Counts 1, 2, and 8, and you're only to consider that if you determine that there is sufficient evidence to determine beyond a reasonable doubt that this extraneous conduct actually occurred. It is not evidence of bad character on behalf of the defendant, and it is not to be considered for any reason for Counts 3, 4, 5, 6, 7, 9, 10, 11, 12, 13, and 14.

Carter did not request any additional language be added to this instruction, nor did he object to the given instruction. The only further complaint was a request by Carter for a running objection to the admission of the evidence. As regards specificity, all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it. *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992). Here, the trial court gave an instruction that followed the requested instruction from Carter's counsel. Furthermore, since Carter made no additional request or objection to the given

instruction, he did not give the trial court a chance to correct or address his objection to the given instruction. Therefore, Carter forfeited any argument on appeal regarding the specific instruction given.

We now move to the other part of Carter's argument as to his third point of error, that the trial court erred in allowing extraneous offenses to be admitted at his trial in violation of Rule 403 over his objection. When determining whether evidence is admissible under Rule 403, we do not consider just whether the evidence is more prejudicial than probative, we consider whether the probative value is substantially outweighed by the danger of unfair prejudice. *Garcia v. State*, 201 S.W.3d 695, 704 (Tex. Crim. App. 2006).

In conducting the balancing test, a court must consider (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence and balance those factors against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency that a jury that has not been equipped to evaluate the probative force of the evidence would give it undue weight, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

The State offered the evidence of the prior criminal trespass warning and circumstances giving rise to the warning, including allegations of family violence, under Rule 404(b) as evidence of intent or motive. Very little testimony directly addressed the

pivotal issue of Carter's mental state at the time of the attacks, which therefore also increases the probative value of the criminal trespass warning as to an essential element. Additionally, although not specifically mentioned by the prosecutor, this evidence could also fall under Code of Criminal Procedure Section 38.371, allowing for the admission of evidence to show the nature of the relationship in a family violence case. The testimony about the criminal trespass warning and the surrounding circumstances was the only evidence of the nature of the relationship between Carter and Danielle, and therefore the probative value of the evidence was high as to the nature of the relationship. Finally, any potential prejudice was diminished by the trial court's limiting instruction, which specifically informed the jury it could not consider the testimony for any counts not involving Danielle and that the jury had to first find the extraneous act occurred beyond a reasonable doubt. Therefore, we conclude that the trial court's ruling was within the zone of reasonable disagreement, and it did not err in admitting the testimony. *See Montgomery*, 810 S.W.2d at 391.

We overrule Carter's third issue.

## Issue Five

In his fifth issue, Carter argues the trial court abused its discretion when it overruled Carter's objection to testimony from a counselor about statements made by a child victim.

AUTHORITY

We review the trial court's decision to admit or exclude evidence for an abuse of discretion. *See Henley v. State*, 493 S.W.3d 82-83 (Tex. Crim. App. 2016). The trial court

abuses its discretion when its decision falls outside the zone of reasonable disagreement. *Id.* at 83.

Texas Rule of Evidence 803(4) provides an exception for statements made for medical diagnosis or treatment, regardless of whether the declarant is available to testify. TEX. R. EVID. 803(4). Statements fall under the exception if they are made for, and are reasonably pertinent to, medical diagnosis or treatment, and if they describe medical history, past or present symptoms, their inception, or their general cause. *Id.*

For statements to be admissible under Rule 803(4), the proponent of the evidence must show that: (1) the declarant was aware that the statements were made for the purposes of medical diagnosis or treatment and that proper diagnosis or treatment depended on the veracity of the statement, and (2) the particular statement offered is also "pertinent to treatment." *See Taylor v. State*, 268 S.W.3d 571, 591 (Tex. Crim. App. 2008).

It is not always so readily apparent in the mental-health context that truth-telling is vital. *Id.* at 590. Not even an older, more mature child will necessarily recognize and appreciate the necessity always to tell a mental-health provider the truth in order to assure the efficacy of treatment. *Id.* In this context, the proponent of the hearsay exception must be sure to make the record reflects both 1) that truth-telling was a vital component of the particular course of therapy or treatment involved, and 2) that it is readily apparent that the child-declarant was aware that this was the case. *Id.*

DISCUSSION

Counselor Lisa Becker testified that the child, during counseling sessions following the incident, told her that:

"Her dad was trying to kill her mom. That her dad was shooting at her mommy, that her daddy shot a -- shot the car up and broke their car window when he was trying to kill their mommy. She has told me that while daddy was shooting -- trying to shoot mommy, that mommy carried her -- picked her up and was running away with her, and that mommy couldn't run fast enough."

Carter objected to the testimony as hearsay. The trial court overruled Carter's objection, and the testimony of Lisa Becker was admitted to the jury.

Assuming without deciding that admission of Becker's testimony was erroneous, we turn to the harm analysis. Since the error here is non-constitutional, the appropriate harm analysis is set out in Rule 44.2(b) of the Texas Rules of Appellate Procedure, which dictates that a non-constitutional error "that does not affect substantial rights must be disregarded." TEX. R. APP. P. 44.2(b). The Court of Criminal Appeals has construed this to mean that an error is reversible only when it has a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

Carter argues that the testimony was particularly harmful because it went towards one of the most contested issues in the case, namely Carter's intent when he shot through the window. We should not overturn the conviction if we have fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but slight effect. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). Becker's brief testimony in front of the jury outlined what the youngest child witness said in therapy

about the incident, specifically that the child's "dad was trying to kill her mom." Similar testimony about the shots into the car window was introduced into evidence through Danielle and another child witness. Danielle also testified that Carter's mother called Danielle before Carter attacked them and told Danielle that Carter was going to kill her. Additionally, Becker's testimony was not emphasized or even mentioned at all during either side's jury arguments. Finally, the jury found Carter guilty on the lesser included charge of Deadly Conduct, which has a reckless mental state rather than intentional or knowing mental state. Therefore, in examining the whole record, we cannot say that the testimony of Ms. Becker had any influence on the jury.

We overrule Carter's fifth issue.

### Issue Six

In his sixth issue, Carter argues the trial court violated Article 36.14 of the Texas Code of Criminal Procedure because the instruction given on the burden of proof for wrongful acts in the court's charge was a comment on the weight of the evidence.

AUTHORITY

A claim of jury charge error is reviewed in two steps. See *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015). A reviewing court must first determine whether there is error in the charge. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If the charge contains error, then the error is analyzed for harm. *Holloway v. State*, 621 S.W.3d 753, 756 (Tex. App.—Waco 2020, no pet.).

The expression of opinion by the trial court on the weight of the evidence is prohibited by Texas Code of Criminal Procedure Article 36.14. *James v. State*, 418 S.W.2d 513, 514 (Tex. Crim. App. 1967). A charge that assumes the truth of a controverted issue is a comment on the weight of the evidence and is erroneous. *Whaley v. State*, 717 S.W.2d 26, 32 (Tex. Crim. App. 1986). This Court has previously held that the use of the phrases "if any were committed" and "if any" does not constitute a comment on the weight of the evidence. *Easter v. State*, 867 S.W.2d 929, 941 (Tex. App.—Waco 1993, pet. ref'd).

The harm analysis for jury-charge error depends on whether the error was preserved. *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). If error was preserved with a timely objection, then such error is reversible if it caused "some harm." *Id*. Conversely, when there is jury-charge error, but the defendant fails to object, we must determine whether the error caused the defendant "egregious harm and created such harm that the defendant was denied a fair and impartial trial." *Almanza*, 686 S.W.2d at 171. Such error must "go to the very basis of the case" or vitally affect the defense theory. *Almanza*, 686 S.W.2d at 172.

DISCUSSION

Carter argues that the erroneous omission of the language "if any" in the jury instruction relating to the extraneous bad acts rises to the level of egregious harm.

The instruction appears in the trial court's charge as follows:

> During the trial, you heard evidence that the defendant may have committed wrongful acts that did not result in any criminal charges or that did not result in criminal convictions. You are not to consider any evidence

of any particular wrongful act unless you find, beyond a reasonable doubt, that the defendant did, in fact, commit that wrongful act. This evidence should not be considered as evidence of character to show that he acted in conformity therewith. Those of you who believe the defendant did the wrongful act may consider it. This evidence was admitted for this limited purpose or proving motive or intent and for no other purpose and may be considered only for Counts I, 2, 3, 4, 8, 9, and 12.

Carter objected that the portion of the instruction referring to motive or intent as a comment on the weight of the evidence, but he did not make any objection to the language "if any" being omitted. Carter concedes that he must show the omission rose to the level of egregious harm, if erroneous. *See Almanza*, 686 S.W.2d at 171.

When conducting a harm analysis under *Almanza*, the reviewing court considers the following four factors: (1) the charge itself; (2) the state of the evidence, including contested issues and the weight of the probative evidence; (3) arguments of counsel; (4) any other relevant information revealed by the record of the trial as a whole. *Carr v. State*, 249 S.W.3d 502, 507 (Tex. App.—Waco 2007, pet. ref'd).

First, we consider the charge itself. The instruction as given clearly placed the burden of proof for the extraneous acts on the State. The charge conditions the use of the evidence on the jury finding the elements of an offense beyond a reasonable doubt and reiterates that it should be used only if believed. *See Mattox v. State*, 874 S.W.2d 929, 934 (Tex. App.—Houston [1st Dist.] 1994, no pet.).

Second, we consider the state of the evidence as to the contested issue of Carter's mental state, which the extraneous act was offered to support. The only evidence which necessitates the extraneous acts instruction is the testimony regarding the criminal trespass warning addressed in Carter's third issue. Additional evidence of Carter's

mental state included testimony from Danielle and A.C. that Carter's mother called and told Danielle that Carter was going to try to kill her right before Carter intercepted Danielle and the children on the road.

Third, we consider the arguments of counsel. Here, neither side emphasized the criminal trespass warning in their arguments, even when discussing evidence showing Carter's mental state.

Fourth, we look to any other relevant information. Here, the jury found Carter guilty on the lesser-included offense of Deadly Conduct, which has a reckless mental state rather than intentional or knowing mental state. This suggests that the jury was not convinced by the evidence brought by the State to try to prove Carter acted intentionally or knowingly when he shot into the vehicle. *See Olivas v. State*, 202 S.W.3d 137, 148 (Tex. Crim. App. 2006).

In light of the jury charge as a whole and the entire record, we conclude the error, if any, in failing to include the "if any" language was not egregious and did not deny Carter a fair trial.

We overrule Carter's sixth issue.

### Issue Eight

In his eighth issue, Carter argues that the trial court abused its discretion by overruling his objection to a comment made by the prosecutor during punishment closing arguments that questioned whether there were assurances that probation would rehabilitate Carter.

AUTHORITY

In assessing whether the defendant's Fifth Amendment right has been violated, courts must view the State's argument from the jury's standpoint and resolve any ambiguities in the language in favor of it being a permissible argument. *Randolph v. State*, 353 S.W.3d 887, 891 (Tex. Crim. App. 2011).

The test for assessing whether the defendant's Fifth Amendment right not to testify has been violated by State's argument is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify. *Id.* In applying this standard, the context in which the comment was made must be analyzed to determine whether the language used was of such character. *Id.*

DISCUSSION

In closing arguments during the punishment phase of trial, Carter's attorney discussed rehabilitation and what sort of conditions might be put on probation, including time in a Substance Abuse Felony Punishment Facility (SAFPF). The prosecutor also discussed probation conditions, arguing:

> "You spent probably two-and-a-half days of the defense telling you that it was drugs. SAFPF will help him. House of Hope may help him. Drug rehab may help him. But think back to the original case, ladies and gentlemen. You received zero pieces of evidence he committed this crime on any drugs. Zero. You convicted him of his violent act when he was stone-cold sober. Drugs didn't do this. He did. SAFPF doesn't fix that. House of Hope won't fix that. Probation can't help that. If this was merely about drugs, why did Dr. Saunders sit here and tell you he had an anxiety problem, he has narcissistic tendencies and he's depressed.

> Why did all four therapists agree on the same thing? SAFPF, House of Hope, and probation cannot help that problem. What assurances has he given you in this case that if he walks out of this jail tomorrow–"

At this point, Carter's attorney objected that the prosecutor was commenting on Carter's failure to testify in violation of Carter's right to remain silent. The prosecutor offered to rephrase the statement to make it clear she was referring to the defense, not the defendant. The prosecutor resumed her argument to the jury, stating: "The defense, in all the defense witnesses, have given you now assurances that if he walks out of this jail tomorrow, that all of you are going to be safe."

The implication that the State referred to the defendant's failure to testify must be a clear and necessary one. *Id.* If the language might reasonably be construed as merely an implied or indirect allusion, there is no violation. *Id.* Additionally, if some other explanation for his remark is equally plausible, we cannot find that the prosecutor manifestly intended to comment on the defendant's failure to testify. *Id.*

Here, there is clearly an alternative, equally plausible explanation for the remark since the prosecutor clarified she was not referring to the defendant not giving assurances, but rather to the defense witnesses. This alternative explanation is further supported by placing the original version of the statement in the context of the surrounding argument in which the prosecutor was discussing the defense witnesses and evidence brought by the defense during punishment.

Carter also argues that "assurances" should be treated like contrition or remorse, in that contrition or remorse can only come from the accused rather than any third-party

witnesses. *See Thomas v. State*, 638 S.W. 2d 481, 484 (Tex. Crim. App. 1982). In *Thomas*, the Court of Criminal Appeals held that the prosecutor's argument regarding the lack of evidence of the accused's contrition was improper because the prosecutor "faulted appellant for that which he could not accomplish through testimony of his wife and sister in that they were not competent and material witnesses on the subject of the state of his mind with respect to contrition." *Id.* By asking this Court to treat "assurances" like contrition, Carter insinuates that any reference to a lack of assurances would necessarily implicate Carter's failure to testify. However, the reference to assurances at issue in this case are inextricably linked to the discussion on the possibility of rehabilitation, which has been distinguished from contrition. *See Logan v. State*, 455 S.W.2d 267 (Tex. Crim. App. 1970); *Allaben v. State*, 418 S.W.2d 517 (Tex. Crim. App. 1967). Unlike contrition, the desire, potential, and ability of a person to rehabilitate himself can be objectively assessed and testimony on this subject does not have to come from the defendant alone. *Davis v. State*, 670 S.W.2d 255, 256 (Tex. Crim. App. 1984). Accordingly, we reject Carter's argument that "assurances," in the context of this case, can only come from the accused.

Therefore, we believe that there was an alternative, equally plausible explanation for the remark made by the prosecutor; we conclude that the trial court did not err in overruling Carter's objection to the statement.

We overrule Carter's eighth issue.

### Issues Four, Seven, and Nine

In three issues, Carter argues the trial court erred in denying his motions for mistrial.

A trial court's denial of a mistrial is reviewed under an abuse of discretion standard. *State v. Gonzalez*, 855 S.W.2d 692, 696 (Tex. Crim. App. 1993).

A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). Thus, a trial court may properly exercise its discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error. *Sewell v. State*, 696 S.W.2d 559, 560 (Tex. Crim. App. 1983). The determination of whether a given error necessitates a mistrial must be made by examining the particular facts of the case. *Hernandez v. State*, 805 S.W.2d 409, 413–414 (Tex. Crim. App. 1990), cert. denied, 500 U.S. 960, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991).

Instructions to the jury are generally considered sufficient to cure improprieties that occur during trial. *Gamboa*, 296 S.W.3d at 580. And we generally presume that a jury will follow the judge's instructions. *Id.* The court's denial of a motion for mistrial constitutes error only if the court's instruction to disregard was inadequate to cure the prejudicial effect of the improper argument. *Wilkerson v. State*, 881 S.W.2d 321, 327 (Tex. Crim. App. 1994); *Foster v. State*, 25 S.W.3d 792, 798 (Tex. App.-Waco 2000, pet. ref'd).

DISCUSSION – ISSUE FOUR

In his fourth issue, Carter argues the trial court erred in denying his motion for mistrial following an objection to testimony relating to Carter's post-arrest silence. Specifically, the challenged testimony proceeded as follows:

Q (BY MR. RISINGER) After Mr. Carter was placed in custody, did you --
on any date after that, did you do anything to assist in this investigation?
A I did.
Q Okay. Can you tell the jury -- let me ask you this: Did you conduct any
interviews?
A Yes.
Q Okay.
A That night, I attempted one.  It did not work.

Carter's attorney then objected, and the trial court sustained the objection.  Carter's attorney then moved for a mistrial, which was denied, but the trial court gave an instruction to disregard the comment.

The asking of an improper question will seldom call for a mistrial, because, in most cases, any harm can be cured by an instruction to disregard.  *Ladd*, 3 S.W.3d at 567.  A mistrial is required only when the improper question is clearly prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors.  *Id*.  Potential prejudice resulting from a question concerning post-arrest silence might be cured by an instruction to disregard.  *See Waldo v. State*, 746 S.W.2d 750, 754 (Tex. Crim. App. 1988).

Although not specifically adopted as definitive or exhaustive, the courts have looked to several factors to determine whether an instruction to disregard cured the prejudicial effect.  *Id*.  The factors are: 1) the nature of the error; 2) the persistence of the prosecution in committing the error; 3) the flagrancy of the violation; 4) the particular instruction given; 5) the weight of the incriminating evidence; and 6) the harm to the accused as measured by the severity of sentence.  *Id.*

First, we look at the nature of the error. *Id.* Following the initial objection and request from Carter to avoid questions that might lead to discussion of Carter's arrest and any attempts to interview him, the prosecutor attempted to move forward by asking about later involvement of the officer in the investigation process. The prosecutor's question did not call for any reference to the officer interviewing Carter on the night of the incident, and in fact specifically asked the officer to move on from that night and focus on the days after the incident. Despite the prosecutor attempting to move on from any discussion of Carter's interview that night, the witness vaguely referenced an interview attempted the evening of the incident which "did not work," but he never specifically referenced Carter.

Next, we consider the persistence and flagrancy of the comment. *Id.* The prosecutor tried to move on following the conference outside the presence of the jury and again after the objection and instruction. The comment made by the witness did not specifically reference Carter, but rather the witness stated in general terms that he tried to conduct an interview as part of the investigation and was unsuccessful in conducting the interview.

We also must consider the particular instruction given. *Id.* The instruction given by the trial court stated: "Please disregard the last statement that was made by the witness. It is not in evidence for any purpose." The courts have found similar instructions adequate to cure the error. *Id* at 755–56 ("Jury is instructed to disregard the last comment of the witness."); *Mendoza v. State*, 959 S.W.2d 321, 324 (Tex. App.—Waco 1997, pet. ref'd) ("I again instruct the jury that they will not consider the last statement

made by the State's attorney for any purpose whatsoever."); *But compare Veteto v. State*, 8 S.W.3d 805, 812 (Tex. App.—Waco 2000, pet. ref'd), abrogated on other grounds by *State v. Crook*, 248 S.W.3d 172 (Tex. Crim. App. 2008) ("You'll disregard," found to be inadequate instruction). Therefore, the trial court's instruction was adequate under the circumstances. *See Waldo*, 746 S.W.2d at 754.

Next, we look at the totality of the incriminating evidence against Carter. *Id.* Here, Danielle, A.C., and the three bystander victims all testified to similar versions of events. Carter's defense focused primarily on his mental state while shooting into the vehicle, arguing that he did not intend to kill Danielle when he did so.

Finally, we consider the severity of the punishment. *Id.* Carter was found guilty on lesser-included charges on several counts and found not guilty on some counts. Considering the nature of the charged offenses, we are unable to conclude that the improper question increased the severity of the sentence. *Id.; See also Johnson v. State*, 83 S.W.3d 229, 233 (Tex. App.—Waco 2002, pet. ref'd).

The comment made by Ranger de la Garza is not of such a nature that an instruction cannot cure it. *See Waldo*, 746 S.W.2d at 754 Because the State did not repeat its question, the instruction was adequate, and there is no indication that the jury's verdict or sentence was influenced by the improper question, we believe that the instruction cured the prejudicial effect. Accordingly, we conclude the trial court did not err by overruling the motion for mistrial since the instruction to disregard was sufficient to cure any impropriety of the comment by Ranger De La Garza.

We overrule Carter's fourth issue.

In his seventh issue, Carter argues that the trial court abused its discretion when it denied Carter's motion for mistrial when the prosecutor made a jury argument regarding the credibility of Carter's expert witness.

Carter's expert witness, Dr. Roger Saunders, testified to the mental state of Carter on the day of the incident based on information provided to Saunders after the incident. Saunders also gave his own conclusions of Carter's intent based on certain evidence or testimony from other parts of trial.

During closing arguments, the prosecutor made the following statement regarding the credibility of Saunders's testimony about Carter's mental state and intent:

> And then finally you get to the third guy, Roger Saunders, who I guess has become a mind reader because he was able to come in and talk to different people and read witness statements. He was able to come here and tell you exactly what was in that guy's mind that day. And it is amazing testimony. I don't think I have ever heard any testimony ever presented in court that had less credibility than that testimony.

Carter's attorney objected to the last statement, and the trial court sustained the objection and gave an instruction for the jury to disregard the statement. Carter's attorney then moved for mistrial, which was denied.

Jury argument is limited to: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answers to argument of opposing counsel; or (4) a plea for law enforcement. *Sanders v. State*, 191 S.W.3d 272, 275 (Tex. App.—Waco 2006, pet. ref'd). While it is error to argue the jury should believe a witness simply because prosecutors and investigators do, evidence creating an inference that a witness is not

trustworthy may certainly be argued. *Gardner v. State*, 730 S.W.2d 675, 698 (Tex. Crim. App. 1987).

Carter relies on *Menefee v. State* and *Puckett v. State* to support his position that a prosecutor may not give her own opinion about a witness's credibility during argument. *Menefee v. State*, 614 S.W.2d 167 (Tex. Crim. App. 1981); *Puckett v. State*, 330 S.W.2d 465 (1959). Carter specifically claims that the argument made by the prosecutor in the present case is "strikingly similar" to the improper argument made in Menefee. *See Menefee*, 614 S.W.2d at 168 ("I don't believe I have ever seen anybody that I thought was any more honest than she is."). While courts have repeatedly held that it is error for the State to bolster the credibility of its witnesses in closing argument, evidence creating an inference that a witness is not trustworthy may certainly be argued. *Gardner*, 730 S.W.2d at 698. Since the prosecutor's argument of Dr. Saunder's untrustworthiness in this case was not improper, the trial court did not err in denying Carter's motion for mistrial.

We overrule Carter's seventh issue.

DISCUSSION – ISSUE NINE

In his ninth issue, Carter argues that the trial court abused its discretion by denying a motion for mistrial based on a comment made during the prosecutor's punishment argument. Specifically, the challenged comment proceeded as follows:

> Think of what you convicted him for. Not just offenses of Danielle, [A.C.], and [J.C.], but of pointing a loaded weapon at Zulma, Lisa, and Barbara. Three people he did not know who were also victims that you convicted him of. What is stopping him on probation from getting angry, and you being next? Or you?

At this point, Carter's attorney objected, and the trial court sustained the objection. Carter's attorney then moved for a mistrial, which was denied. The trial court gave an instruction to disregard the comment.

Citing a number of cases purportedly dealing with similar comments as the present case,[1] Carter argues that the comment by the prosecutor does not fit into any of the four proper jury argument categories, but rather it was a plea for abandonment of objectivity. The Court of Criminal Appeals has previously held similar comments to be proper pleas for law enforcement. *See Starvaggi v. State*, 593 S.W.2d 323, 328 (Tex. Crim. App. 1979) ("I hope he doesn't come knocking on one of your doors at eight o'clock in the evening"); *DeBolt v. State*, 604 S.W.2d 164, 169 (Tex. Crim. App. 1980) ("(W)hat I'm mainly concerned with is he is not out among the public, living next door to me or next door to you or to anybody else"). When comparing the comment in this case to the comments made in the cases cited by Carter, one defining distinction seems to be whether the comment, in phrasing or context, asks the jurors to look prospectively or retrospectively. In other words, are the jurors being asked to put themselves in the

---

[1] These cases include: *Brandley v. State*, 691 S.W.2d 699, 712 (Tex. Crim. App. 1985) ("It is fair for you to think about the feelings of the father who lost his baby daughter" held improper, but harmless error); *Chandler v. State*, 689 S.W.2d 332 (Tex. App. 2 Dist., 1987) ("(I)t could have been you, I, or any member of this audience walking down that street" held improper, but harmless error); *Bible v. State*, No. 10-10-00070-CR, 2011 WL 1902021, at *8 (Tex. App.—Waco May 11, 2011, pet. ref'd) ("'What's going on?' 'Bam, bam, bam,' and down they go. It could be in the parking lot of a convenience store, it could have been me, could have been you, one of you" held to be improper comment, but harmless error); *Smith v. State*, No. 14-99-00113-CR, 2000 WL 1676071, at *6 (Tex. App.—Houston [14th Dist.] Nov. 9, 2000, pet. ref'd) ("if you saw Robert Smith angry out on the street you'd probably walk away" held improper, but harmless error); *Lights v. State*, No. 14-94-0046-CR, 1996 WL 42038, at *3 (Tex. App.—Houston [14th Dist.] Feb. 1, 1996, pet. ref'd) ("And if you want to promise the next victim by letting him out that he's not going to do it again, then do it. I mean if you want to guarantee your mother or your brother or your father or your daughter or your sister-" held a permissible plea for law enforcement); *Moyer v. State*, 948 S.W.2d 525, 531 (Tex. App.—Fort Worth 1997, pet. ref'd) ("How could any of you go to sleep at night wondering whether he was on the street? Who is going to be next?" held to be proper plea for law enforcement).

victim's shoes at the time of the offense or are they being asked to consider future risks from the defendant as members of the community? Here, the prosecutor's remarks are asking the jurors to consider the future risk Carter poses to the community and to the jurors as members of the community. Therefore, the comment is a proper plea for law enforcement. Accordingly, the trial court need not have sustained the objection or given the instruction to disregard, and therefore did not err in denying Carter's motion for mistrial.

We overrule Carter's ninth issue.

## Conclusion

Having found no reversible error, we affirm the judgment of the trial court.

MATT JOHNSON
Justice

Before Chief Justice Gray,
      Justice Johnson, and
      Justice Smith
(Chief Justice Gray concurs.)
Affirmed
Opinion delivered and filed May 9, 2024
Do not publish
[CR25]

